### B. D. PELTON v. THE STATE.

#### No. 22.    Decided March 3, 1909.

#### Rehearing Granted November 30, 1910.

1.—Forgery—Receipt—Indictment—Pecuniary Obligation—Explanatory Allega-
    tion.

Where the alleged forged receipt set out in the indictment did not show upon its face a pecuniary obligation, and the explanatory allegations in the indictment did not allege how any pecuniary obligation was created, discharged or defeated by said receipt, if it was true, the indictment was insufficient.    Ramsey, Judge, dissenting.

**2.—Same—Other Offenses—Intent—Evidence.**

Upon trial of forgery where defendant's intent became an issue, there was no error in admitting in evidence other transactions similar to and about the time of the forgery.

**3.—Same—Evidence—Other Transactions.**

Upon trial of forgery, where the issue was the intent of the defendant, another transaction which showed embezzlement and not forgery on the part of the defendant was inadmissible.

**4.—Same—Allegation—Proof—Variance.**

See opinion for comment as to the question of variance between the allegations in the indictment and the proof.

**5.—Same—Charge of Court—Collateral Forgeries.**

Where, upon trial of forgery, the State had introduced testimony with reference to collateral forgeries by the defendant, the court in his charge should have plainly instructed the jury in explaining to them that they could use this testimony on the question of intent and motive, that these collateral forgeries must be found by them to be forgeries, and the court's charge that if this class of testimony tended to show forgeries, was reversible error.

Appeal from the District Court of Runnels. Tried below before the Hon. Jno. W. Goodwin.

Appeal from a conviction of forgery; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*John I. Guion* and *M. C. Smith* and *Smith & Lattimore,* for appellant.—Upon question of indictment: Black v. State, 2 Ct. Rep., 161; Cagle v. State, 39 Texas Crim. Rep., 109; Simms v. State, 32 Texas Crim. Rep., 277; King v. State, 27 Texas Crim. App., 567.

On question of the court's charge: Taylor v. State, 50 Texas Crim. Rep., 382.

On question of admitting evidence of other transactions: Gardner v. State, 55 Texas Crim. Rep., 394, 117 S. W. Rep., 140; id., 55 Texas Crim. Rep., 400, 148.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was charged with forgery. The indictment charges forgery of the following instrument:

"Form 648 Standard. (10)
"Santa Fe.

"Ballinger, 6/27, 1907.

"Received of B. D. Pelton, agent......................the sum of Thirty-seven & 50/100 Dollars..............being full payment for loading handling mdse.

"37.50.                                        Geo. J. Jones."

The substance of the contention in the motion to quash is that the indictment charges no offense against the law, and inferentially the

instrument is not such as to constitute the basis of forgery. Several special exceptions are urged to the validity of the indictment, in that the innuendo and explanatory averments are not sufficient to show by the pleading that it is such an instrument as is the subject of forgery.

Article 539, Penal Code, provides: "It is forgery to make, with intent to defraud or injure, a written instrument, by filling up over a genuine signature, or by writing on the opposite side of a paper so as to make the signature appear as an indorsement." The charge against appellant is that he filled up an instrument which had been signed by Geo. J. Jones for an amount in excess of what Jones authorized him to insert, and which the facts show was far in excess of the amount legitimately authorized to be inserted in the blank receipt signed by Jones. As a general rule, under the authorities in this State, where the instrument is not on its face, such as will constitute forgery without innuendo or explanatory averments, it is necessary to allege such innuendo or explanatory averments as will show the instrument to be one contemplated by a statute interdicting forgery. The innuendo and explanatory averments allege that Pelton was the agent of the Gulf, Colorado & Santa Fe Railway Company, and properly avers and explains the different expressions in the indictment, so as to explain that B. D. Pelton was the agent of the Gulf, Colorado & Santa Fe Railway Company, and that the two words "Santa Fe" meant the Gulf, Colorado & Santa Fe Railway Company, and that the abbreviation "mdse." meant merchandise; that B. D. Pelton was the agent at the town of Ballinger, in the county of Runnels, and that he was authorized to employ help and labor such as was necessary for conducting the business of said corporation at said station and office, and that in the discharge of his duty as such agent and employe he had authority to cash out such money belonging to said corporation as was under his care and control at said office and station, and for the further purpose of paying the expenses and cost of conducting such business, and that it was his duty to have the party to whom he paid such money to sign a receipt for the money so paid out, and when this receipt was signed it was Pelton's duty as agent to turn it into the Gulf, Colorado · & Santa Fe Railway Company, for which he would receive credit for so much cash. It further avers that at the time Geo. J. Jones was employed at said office and station at Ballinger by the Gulf, Colorado & Santa Fe Railway Company, and that appellant induced him (Jones) to sign his name to what is known as a blank extra-labor receipt, which blank receipt was, after it had been signed, to be filled in for the proper amount, and that said forged instrument purports to be a receipt given appellant by Jones for money paid to Jones for labor at the office and station for handling merchandise, for the amount of $37.50—thereby meaning that appellant had paid Jones the sum of $37.50 for the Gulf, Colorado & Santa Fe Railway Com-

pany for such labor performed, and that thereafter on or about the 30th of June, 1907, this instrument was turned into the Gulf, Colorado & Santa Fe Railway Company and appellant received credit for that amount. It further alleges that at the time the instrument was so forged the railway company was not indebted to Geo. J. Jones for any amount, but if indebted in any amount, it was for much less than the sum set out in the instrument, the exact amount of which indebtedness was for ten days' service at the rate of $35 per month.

Quite a number of exceptions, amounting to ten in number, are reserved to the indictment. Appellant puts them in the concrete about as follows: First. It is alleged that said Jones was in the employ of said railway company, but it is not alleged that he was employed by appellant. Second. It is alleged that appellant had the authority in the discharge of his duty as such agent to pay cash out of such money belonging to the company as was under his care and control for the purpose of paying expenses, etc., but it is not affirmatively alleged that appellant had under his care and control any money belonging to the company at the time of the alleged forgery. Third. It is alleged that said receipt was turned in to the company, but it is not alleged who turned it in, and appellant would not be responsible if someone had subsequently turned it in, and that it should have been affirmatively alleged in the indictment that appellant turned it into the company.

In regard to the first proposition, the indictment does not specifically allege that Jones was employed by appellant, but it does allege that he was the employe of the company at the particular station, etc. We are of the opinion that this is sufficient. If Jones was the employe of that company at that point, and it was appellant's duty to pay the indebtedness that might accrue in favor of Jones for services rendered, and appellant had authority to employ Jones, and Jones was under his direction and to be paid for his services by appellant, we are of opinion that this matter is sufficiently alleged when it is averred that Jones was in the employ of the railway company.

In regard to the second, that is, that it was not alleged affirmatively that appellant had under his care and control money belonging to the railway company at the time of the alleged forgery, we are of opinion that it was not necessary to charge specifically that at the very time of the alleged forgery that appellant then had under his control money belonging to the company sufficient to pay Jones' claim. It was appellant's duty, it seems under the facts, to pay off and discharge the employes in and about the office and station at Ballinger out of such money as was taken in for the railway company, and it would be wholly immaterial whether at the particular time the money was on hand or not. If it subsequently came into his hands the money would be subject to the payment of the debt.

The fact that money was not on hand would not affect the forgery of the receipt. Appellant, it seems, had control of the station and the reception and paying out of money taken in at the station, and if he had money in his possession either at the particular time, or subsequently, it would be subject to the payment of Jones' claim, and it was not necessary, therefore, to allege that the money was in appellant's possession and under his control at the very time of the alleged forgery.

In regard to the third, we do not believe it has any merit in it, that is, that the indictment should have averred that appellant turned the receipt into the company. Nor, in our judgment, was it necessary in this indictment for forgery to allege that it was turned into the company at all. The forgery, if a forgery, was complete at the time appellant filled in the amount in the blank receipt, and it would be immaterial that he passed the instrument to the company in order to receive credit for it, and therefore unnecessary to allege it. It would be immaterial, therefore, whether appellant turned it in or whether anybody else turned it in to the company. It may be the subject of the charge of passing the forged instrument on the part of the party who did turn it in if the party was cognizant of the fact that it was forged, but appellant is charged only with forgery by filling in a blank receipt for an amount beyond what Jones was entitled to receive. We have noticed these three propositions, because appellant puts the motion to quash rather in the concrete in the statement of the case in his brief. We are of opinion that the innuendo and explanatory averments are sufficient to show the instrument alleged to be forged is such an instrument as would increase the liability of the railroad had it been genuine. We are therefore of the opinion that there is not sufficient merit in the motion to quash the indictment to authorize a reversal of the case.

There was introduced against appellant evidence of the insertion in similar blank receipts of amounts in excess of those which should have been inserted. In other words, there was evidence of forgery of other instruments similar to the one relied upon in the indictment. Appellant reserved various, sundry and divers exceptions to the introduction of these instruments. In connection with these instruments, the parties who had signed the instruments went into a full detailed statement of each particular transaction, as fully as did Jones in regard to the one relied upon for conviction. In other words, the details in regard to each one of these were as complete and full as they were in regard to the transaction relied upon in the indictment. It has often been held that evidence of extraneous and contemporaneous crimes could be introduced in evidence to develop intent or system as well as other matters. In this case there was by cross-examination of the witness Jones a studied and aggressive effort to show that the receipt which is alleged to be the basis of forgery in this case, was executed in the condition it was when pro-

duced and for the sum therein named. Jones is made to say finally that he believed that there was nothing written in the printed receipt, that is, that the $37.50 which finally appeared in same, was not written therein when signed by him, but does say finally that he is not certain. He was also pressed to say if he had not signed a payroll in which the same amount of money appeared to be due him. Evidently the theory of the defendant was, and his entire effort was directed along this line, to break down the testimony of Jones by cross-examination, innuendo and suggestion, and to induce the jury to believe that he had in fact signed the payroll and receipt for the amount of money named therein. In this condition of the record the State was permitted to introduce proof of other contemporaneous crimes and similar transactions affecting a large number of other laborers and persons in that vicinity, for the purpose of showing that appellant was engaged in swindling generally and in padding payrolls for the purpose of corroborating Jones and showing the intent and purpose with which he had acted in the transaction now under consideration. In this case the court instructed the jury as follows: "If any evidence has been introduced before you tending to show that the defendant made with intent to injure or defraud, other written instrument or instruments by filling up over genuine signature or signatures, in such manner and under such circumstances as to constitute the offense of forgery, as that offense is defined in the foregoing charge, you are instructed that such evidence is admitted for the sole purpose of showing (if it does show) the intent of defendant in the transaction with which he is charged in this case, if such offense was committed, and said testimony does not and should not be considered as affecting in any way the question whether the defendant forged the instrument set out in the indictment." This was an admirable presentation of this phase of the law and follows the opinion of this court in the case of Taylor v. State, 50 Texas Crim. Rep., 381.

We believe that appellant was tried on a valid indictment; that the testimony introduced against him, which was objected to, was admissible for the purposes for which it was limited, and that he has had a fair submission of the issues arising in his case, and that the evidence abundantly supports the verdict.

The judgment is therefore affirmed.

*Affirmed.*

Davidson, Presiding Judge, dissents.

ON REHEARING.

November 30, 1910.

LANE, SPECIAL JUDGE.—This case is now before us on motion for rehearing by appellant. The statement as to what allegations

the indictment contains is correctly stated by Judge Ramsey in the original opinion.

Appellant insists that the indictment is not sufficient, and that unless the instrument imports a legal pecuniary ˙ obligation or the extraneous averments set up facts which show said pecuniary obligation, the indictment alleges no offense, and that the case should be reversed and dismissed, and in support of this proposition appellant refers us to the following authorities: Black v. State, 2 Texas Ct. Rep., 161; Cagle v. State, 39 Texas Crim. Rep., 109; Simms v. State, 32 Texas Crim. Rep., 277; King v. State, 27 Texas Crim. App., 567.

From the extraneous allegations in the indictment we do not see wherein any pecuniary obligation is created, increased, discharged or defeated by the receipt if it were true. It is not charged in the indictment that it was appellant's duty to account for the   money collected or paid out by him, nor is it charged that the company was in anywise bound to repay him if he paid the money out of his own funds. Nor is it alleged that the company was in any way bound to give him credit for the money if paid out of the company's funds. The allegation is that it was appellant's duty when he paid out the money to take a receipt therefor and turn it in to the company and for which he would receive credit as so much cash. Did he owe the company anything? There is no such allegation. Who would give him credit? The railroad company? It is not so alleged. Why any need to give Pelton credit for this receipt? There is no allegation of any reason why. What is meant by the expression "he would receive credit therefor?" Did he owe the company? There is no allegation that he did. If the credit they would give was gratuitous or for any other reason except because there was a legal obligation, then no legal obligation was created by this receipt.

Appellant insists that the indictment should have contained extraneous averments showing how the receipt, if true, would have affected, increased, created, diminished or discharged an existing pecuniary obligation. We think this matter is correctly disposed of in the original opinion. Appellant, as we understand, contends that the allegation that "it was appellant's duty" to have the party to whom the money was paid sign a receipt for same, and when signed that it was his "duty" to turn it into the company, does not import a legal obligation, but imports a moral obligation, and to say that it was his duty to do a certain thing imports no more legal obligation than to say it is a man's duty to support his aged father or mother. We do not agree with appellant in this contention. We believe that the word "duty" in the sense in which it is here used in the indictment means that appellant was under a legal obligation to have the party to whom the money was paid sign the receipt and turn it in to the company. To do this was a part of the services which appellant was under legal obligation to perform, and if intending to per-

form his service faithfully to the company he could not disregard this part of his services no more than any other party. A duty is a legal obligation to perform some act. 10 Am. & Eng. Ency. of Law, p. 351.

We think the indictment would have been sufficient if it had contained the following allegations: That it was appellant's duty as the agent of the railroad company to account to said company for all moneys coming into his hands belonging to said railroad company, and that it was his duty as agent of the company to account to the company for all moneys paid out by him for the company, and that it was his duty as agent of said company to make a report daily, weekly or monthly, as the case may be, to said company of all moneys collected by him as agent for the company, and all moneys paid out by him for said company, and that when he as agent for said company paid out money for extra labor and took receipts therefor, that said company then and there and thereby became bound and compelled to repay Pelton, if paid out of his own money, or if same was paid out of the money of said company which had come into the possession of said Pelton as agent of said company, and for which it was his duty as such agent to account to said company, that then and in that event said company was bound and compelled to give him credit for such moneys upon such accounting and reporting. We do not think that the indictment is a valid one, and for this reason it should have been quashed by the court below, and as another indictment can be found, the offense not being barred by limitation we will notice the other questions presented.

As to the Fowler and Crews receipts, they were transactions precisely similar to and about the same time of this forgery, and were admissible to show the intent of appellant. Fonville v. State, 17 Texas Crim. App., 368; Mason v. State, 31 Texas Crim. Rep., 306; Ham v. State, 4 Texas Crim. Rep., 645; Francis v. State, 7 Texas Crim. App., 501; Mallory v. State, 37 Texas Crim. Rep., 482; Mc-Glasson v. State, 37 Texas Crim. Rep., 620.

In 5 Ency. of Ev., p. 868, the author says: "The fact that the accused uttered other false writings under similar circumstances is admissible," and in support of this doctrine he cites authorities from England and some sixteen States. We have not had access to these cases and do not know that they support the text.

In regard to the McAdams receipt, we do not think this transaction was admissible for the reason that it shows embezzlement of the funds of the company by appellant more than it does a forgery. As we understand the evidence, there is no evidence of McAdams that he did not sign the receipt for $625.13 already filled out. He says several times that he does not remember whether this particular receipt was filled out when he signed it or not. This being true, there was no evidence before the jury that this McAdams receipt was forged and this particular transaction, we think, became inadmissible.

In regard to the complaint of appellant that there is a variance between the allegations and the proof in reference to the receipt, the receipt as copied in the indictment shows "Received of D. B. Pelton, Agent;" and the receipt introduced in evidence in one place in the statement of facts shows "Received of D. B. Pelton, Agt.," and in another place in the statement of facts it shows "Received of D. B. Pelton, Agent." This question can be very easily avoided in case of another indictment.

Appellant objects to the charge of the court wherein the court undertakes to limit the effect of the evidence in reference to the collateral forgeries. This portion of the court's charge is correctly set out in the original opinion. In reference to such charge, this court held in the case of Taylor v. State, 50 Texas Crim. Rep., 382, that the jury should be plainly told that before they can consider such collateral matters as evidence against the defendant on intent, on motive, etc., those collateral forgeries must be found to be forgeries. In the instant case the court charged the jury that "If any evidence has been introduced tending to show that defendant," etc. In order for these collateral matters to be used by the jury as evidence on the intent of the defendant, we think they must believe from the evidence beyond a reasonable doubt that they are forgeries. It is not sufficient if the evidence only tends to show them to be forgeries. If the evidence only tends to show them to be forgeries, then they are not admissible against a defendant. 50 Texas Crim. Rep., 384. The indictment charges that the company was not indebted to Jones in any amount, or if indebted it was for a much less amount than that set out in the receipt, the exact amount being for ten days' service at $35 per month. This appears to be somewhat contradictory. The allegation should be in accordance with the facts.

We return our thanks to the attorneys for the appellant for the able brief that they have filed in this case and which has assisted us a great deal in the determination of the questions involved.

Because we believe the indictment is insufficient, the motion for rehearing will be granted, the affirmance set aside, and the judgment of the lower court will now be reversed and the prosecution dismissed.

*Reversed and dismissed.*

RAMSEY, Judge (dissenting).—After the judgment of affirmance in this case a very exhaustive and able motion for rehearing was filed herein in behalf of the appellant. In view of the conceded difficulties in the case counsel were soon thereafter invited to argue the motion orally, which was responded to and all the matters discussed in the motion argued at length. Later when Judge Lane was appointed to sit with us the motion was again argued by the same learned counsel. On the original hearing the sufficiency of the indictment was not a serious issue among us, and originally we all agreed that the indictment was sufficient. Our differences related to other matters as the original

opinions will show. On the coming in of the motion for rehearing, however, wherein the insufficiency of the indictment was more pertinently raised, Judge Davidson at once held it to be insufficient, whereas, I was not convinced that it was invalid. While I have been a witness of the disinterested and unselfish labors of Judge Lane in endeavoring to reach a correct solution in this and other cases in which he has been appointed to sit with us, and while I am not unmindful of the value of and importance to be attached to his deliberate opinion, sanctioned and approved as it is by our learned presiding judge, yet candor compels me to say that I am not convinced that we were wrong and I stand by the original opinion. It seems unnecessary to go into the matter further. My views on indictments in forgery cases generally will be found in the recent case of Forcy v. State, to which the interested reader is referred. Believing that appellant has had a fair and impartial trial, on a valid indictment, and that the verdict is supported by the evidence, I therefore respectfully enter my dissent.