## W. I. HALEY v. THE STATE.

No. 5561. Decided March 31, 1920.

Rehearing Denied June 23, 1920.

**1.—Murder—Evidence—Other Offenses—Motive—Rule Stated.**

Where it is reasonably apparent that successive crimes are but necessary steps or parts in the completion of a formed design, evidence establishing each of said crimes becomes competent and material in proving any other part or the whole of such enterprise, and it was, therefore, legitimate to introduce evidence against the defendant that he had poisoned his wife in order to marry the wife of the deceased, and there was no reversible

error; this testimony being properly limited. Following Pelton v. State, 60 Texas Crim. Rep., 412, and other cases. Distinguishing Smith v. State, 44 Texas Crim. Rep., 63, and other cases.

### 2.—Same—Sufficiency of the Evidence—Defendant's Motive.

Where, upon trial of murder the evidence was sufficient to show that defendant killed the deceased in order to possess himself of the latter's wife, and there was also evidence that defendant had poisoned his wife in order to obtain his object, the judgment of conviction giving him a life sentence in the penitentiary was sustained.

### 3—Same—Rehearing—Change of Venue—Practice on Appeal—Recognizance.

Where appellant in his motion for rehearing insisted that no sufficient recognizance was entered into by him at the time the venue of the case was changed, but the record showed that no such question was raised, upon the trial, and besides, no exceptions were taken in the court from which the venue was changed to such change of venue, the same cannot be considered. Following Thompson v. State, 35 Texas Crim. Rep., 505.

### 4.—Same—Name of District Court—Practice on Appeal.

Where it was urged in appellant's motion for rehearing that the cause should be reversed because the District Court of Kaufman County, in its order changing the venue, designated the court to which the cause was sent, as Criminal District Court, Place No. 2, Dallas County, while the statute named said court "Criminal District Court No. 2, Dallas County," and that the use of the word "Place" in the order changing the venue would be such misdescription of the court to which the case was sent as to be fatal. Held: that this contention is untenable; besides, such plea to the jurisdiction should have been made in the court from which the venue was changed. Following Krebs v. State, 8 Texas Crim. App., 1, and other cases.

### 5.—Same—Evidence—Other Offenses—No Reversible Error.

Where appellant in his motion for rehearing again complains of the admission of evidence as to the details of the supposed death of his wife by poisoning, this court after a careful review of these matters adheres to its former ruling.

Appeal from the Criminal District Court No. 2, of Dallas. Tried below before the Honorable C. A. Pippen.

Appeal from a conviction of murder; penalty: a life sentence in the penitentiary.

The opinion states the case.

*A. U. Puckett* and *Reed Williams,* for appellant.—On question of change of venue: Harris v. State, 71 Texas Crim. Rep., 463; State v. Butler, 38 Texas, 560.

On question of want of recognizance: Vance v. State, 34 Texas Crim. Rep., 395; Craddock v. State, 15 Texas Crim. App., 641; Thrash v. State, 16 id., 271; Williamson v. State, 12 id., 169; Ray v. State, 16 id., 268.

*Alvin M. Owsley,* Assistant Attorneys General, and *Jed C. Adams,* for the State.—On question of other crimes: Robbins v. State, 73

Texas Crim. Rep., 367; Chandler v. State, 60 id., 329; Ross v. State, 71 id., 493.

On question of change of venue: Tellison v. State, 35 Texas Crim. Rep., 388, and cases cited in opinion.

LATTIMORE, JUDGE.—In this case appellant was convicted of the murder of Mulkey Williams, and given a life term. This is the second appeal, the opinion on the former hearing being found in 84 Texas Crim. Rep., 629, 209 S. W. Rep., 675.

Mrs. Williams, the wife of deceased had been a sweetheart of appellant before her marriage, and before he married. Some years after the marriage of Mrs. Williams, and of appellant, they met on a train, and it appears that from and after said meeting, appellant began making professions of great love for her; and neglected no opportunity of seeing her and pressing his attentions upon her. Many times he stated his desire for her, and his intention to have her for his own, proposing that they quit their respective spouses; that he would pay the expense of divorces; that he also frequently told her that if she did not quit her husband, he would get rid of him in some way or other. This relationship between appellant and Mrs. Williams, seems to have continued for several years, and up until the time of this homicide. She testified that she declined to quit her husband, and remonstrated with appellant about his increasing attentions to her; and that the last time she saw him before the death of her husband, he again repeated his threat to get rid of the deceased.

The homicide occurred in April, 1918, and it appears from the record that in June, 1917, the wife of appellant died under circumstances more fully hereinafter stated. Appellant increasingly paid attentions to Mrs. Williams after the death of his wife, as she expressed it, imploring her to quit her husband and go with him. Every day or two, he would come to her and insist upon her leaving deceased, and would renew his protestations of affection for her, and his determination to get rid of deceased. The facts surrounding the immediate killing, are stated with sufficient fullness in our former opinion, and we do not think it necessary to repeat them here.

We think the evidence sufficient to support the verdict. In developing its case, which was one of circumstantial evidence, the State sought to establish that the wife of appellant was killed by poison administered by him. The details of the evidence offered in support of this theory were strenuously objected to by appellant. The evidence showed without contradiction the strong passion of appellant for Mrs. Williams; his desire to possess her; his pleas to her both before and after the death of his wife, that they should rid themselves of their respective spouses by divorces, or that they should quit them for each other. We think this would supply sufficient motive for the killing of either the wife of appellant, or the husband of Mrs. Williams, and that such proof would be admissible in attempting to es-

tablish guilt upon the charge of killing either. We think further that proof of the fact that appellant killed his wife and thus removed one obstacle to the end apparently so ardently desired by him, to wit: the possession of Mrs. Williams, would be admissible as a link in a chain of circumstances, showing him to be the murderer of Mr. Williams. It must be apparent at once that this is to be distinguished from proof of an extraneous disconnected offense, such as appears in most of the cases cited by appellant in his brief. In the instant case, we have a direct application of the doctrine of system, as we understand it. If the State's theory be true, the purposed possession of the woman in the case, in view of her refusal to quit her husband for him, necessitated the removal of two people who stood between them; two obstacles which kept appellant from the attainment of his unholy desires. Where it is reasonably apparent that successive crimes are but necessary steps or parts in the completion of a formed design, evidence establishing each of said crimes becomes competent and material in proving any other part or the whole of such enterprise. If appellant had been convicted of the murder of his wife, there seems no question but that fact would be admissible under the circumstances of this case. As we understand this record, practically the only objection here urged against this conviction, is that the State was allowed to introduce on the trial the evidence claimed by it sufficient to establish that appellant did kill his wife. While not the ground for the reversal of this case on the former appeal, the opinion discusses the admissibility of the evidence offered to show that appellant killed his wife, and this court held that said evidence, as it appeared on the former appeal, apparently failed to establish the guilt of the uxoricide, and, not making clear his guilt, same should not have been admitted; but we announced that if on another trial, the murder of the wife of appellant was to be relied on as a guilty circumstance, such fact must be more fully established; and further, that the jury should be instructed not to consider the evidence offered in support of such fact at all, unless they believed beyond a reasonable doubt, that the evidence fastened such crime upon appellant. Examining the charge given in the instant case, we find that the trial court so instructed the jury, and no complaint appears of the sufficiency of said charge.

Comparing the facts shown on the instant trial, as establishing that appellant's wife was poisoned by him, with those in evidence on the former trial, we find that the testimony now appears much more cogent. Dr. Shands, who was called to see Mrs. Haley on the night she died, testified on the instant trial, that he found her dead: ''I examined the body . . . I found evidence of a struggle and convulsions . . . I noticed a few splotches on the body; don't know how many there were. I think they were on the chest, and some on the limbs . . . I am familiar with what the effects of strychnine poison are on the body of a person who has taken

strychnine; they generally have splotches; they have convulsions and as a rule have some splotches on the body after strychnine poison; they generally die from convulsions, and we find, usually, splotches on the body and some evidence of convulsions. The bitten lip would indicate a struggle, pretty violent it would be. These splotches I found on the body were such as I suppose would expect to find on the body of a person who had died from strychnine poison. I should think the splotches I found on the body were such as would be found on the body of a person who had died from strychnine poison. In my opinion as a medical man, from my knowledge of this lady's death, and the facts transpiring before, at the time of her death, I would say that her death was violent. To the best of my judgment, from the condition of her lip that had been bitten, it was either convulsions or violent pain, I don't know which. My opinion is that she had a violent death.''

Further, the doctor said: ''The evidence I found on the body makes me now think that her death was caused from something on the order of strychnine poison; my opinion is that something caused a violent death, an unnatural death.''

The evidence of Mrs. William Dozier shows that a few days after the death of Mrs. Haley, appellant told her that he had cleaned out his medicine chest, and she asked him if there was any poison there, and he said no. Later this witness found in said medicine chest a bottle of strychnine, a part of which was gone, and she at once asked appellant about this, and he then said to her that he got this strychnine eight years before, to kill a dog, but that it had never been unwrapped. When the bottle was found by Mrs. Dozier, it was wrapped in a piece of newspaper, which paper was introduced in evidence, and showed a date of May, 1917. The death of Mrs. Haley occurred in June, 1917. Mrs. Williams testified on the instant trial that Mrs. Haley was buried on Tuesday, and that on the following Thursday appellant went to a ball game, and came later out to her house, and that night told her that he thought his wife had taken poison. He stated also that on the fatal night and just a short time before her death he gave to his wife quinine in a capsule.

There were other facts in evidence, relative to the theory that appellant poisoned his wife. We are of opinion that this evidence was admissible, and that its effect was for the jury, under proper limitation, as given by the trial court. Pelton v. State, 60 Texas Crim. Rep., 412; Ann. Cases, 1912-C, p. 86; Baxter v. State, 91 Ohio St., 167, 110 N. E. 456; State v. Hyde, 234 Mo., 200, 136 S. W. Rep., 316; Commonwealth v. Robinson, 146 Mass., 571, 16 N. E., 452; Haley v. State, 84 Texas Crim. Rep., 629, 3 A. L. R., 771.

We have carefully examined the authorities cited by appellant, and think them not in point. In the Smith case, 44 Texas Crim. Rep., 53, cited, this Court merely held that the details of the counterfeiting were inadmissible against appellant, when he had admitted that

he had been engaged in making counterfeit money. In the Ware case, 36 Texas Crim. Rep., 600, the accused was a witness in his own behalf, and for the purpose of affecting his credibility, was asked on cross-examination, if he had not stolen various and sundry articles on divers occasions. This court held that while proof of his indictment for such offense was admissible, the details of such transactions were inadmissible. All of the cases cited are easily distinguishable from the one now before the court. The Menefee case, 67 Texas Crim. Rep., 201, 149 S. W. Rep., 142, is especially relied on as applicable. Menefee was charged with the murder of Glasgow. To show ill-will against deceased, the State undertook to show that Glasgow had tried to have a prosecution instituted against Menefee, and was permitted to go into the details of the offense for which Glasgow attempted to have Menefee prosecuted. This was clearly error. In all these cases, this court properly held that details which were unnecessary and encumbered the record, and from which possible mischief and harm came to the accused, and which could make no clearer any issue material to the case on trial, were, under the facts of the given cases, inadmissible. Not so in the instant case. The details admitted were each and all necessary and material to the establishment of the link which the State was seeking to forge in the chain of circumstances, said link being that appellant poisoned his wife.

We have found no reversible error in this record, and the judgment of the trial court will be affirmed.

*Affirmed.*

ON REHEARING.

June 23, 1920.

LATTIMORE, JUDGE.—Appellant's motion for rehearing most ably and ingeniously urges various questions. It is insisted that no sufficient recognizance was entered into by appellant at the time the venue of his case was changed from Kaufman to Dallas County. Looking to the record, we find no such question in any way raised upon the trial below. There was a plea to the jurisdiction there made, and overruled, which we will notice later, but no reference occurs therein to the question of recognizance. There appears in the record a motion by appellant—granted by the trial court—requiring the clerk of the District Court of Kaufman County, to send to the clerk of the trial court a correct transcript of the proceedings had in reference to the case in Kaufman County, but further than to plead to the jurisdiction of the lower court, upon the ground that the order of the District Court of Kaufman County, in changing the venue herein, incorrectly designated in th Dallas County Court, to which the case was sent, no objection was raised to the jurisdiction of the trial court. In this condition of the record, no error in

the recognizance is brought before us for review.  After the affirmance of this case, a certified copy of the transcript of the proceedings in the Kaufman County District Court was filed with our clerk, showing the recognizance entered into by the appellant in that court. Replying thereto, and at a later day, the clerk, and district judge of Kaufman County, also filed papers, showing that the recognizance made by appellant at the time of the change of venue, bound him to appear before the same court to which the venue was changed.  If we consider one of these attacks upon the correctness of the record, we should consider both.  We think the trial court the proper place to present such objections, so that if there be error in the recognizance, it might be then corrected.  Thompson v. State, 35 Texas Crim. Rep., 505.  As said by Judge Hurt, in Caldwell's case, 12 Texas Crim. App., 316, in discussing a different question: "Will this court reverse a judgment for these irregularities, when the defendant made no objection at the time, taking his chance of being acquitted by this jury thus sworn, and holding in reserve this matter to be used in his motion for new trial, and, on failure there, to be used in this court as ground for reversal of the judgment?  We think not."

It is also urged that this case should be reversed because the District Court of Kaufman County, in its order changing the venue, designated the court to which the case was sent, as "Criminal District Court, *Place* No. 2, Dallas County," it being stated that the name given said court by the statute creating same, was "Criminal District Court Number Two, Dallas County," and that the use of the word "Place" in the order changing the venue, would be such misdescription of the court to which the case was sent, as to be fatal. When this case was called for trial in the court below, a plea to the jurisdiction was presented, based on the contention now under discussion.  The same was overruled, the trial court explaining in his qualification to the bill of exceptions, that he regarded the word "Place" as surplusage.  It is not contended that the Criminal District Court No. 2, of Dallas County, in which the instant trial was had, was not a court of competent jurisdiction to try a case of this character, and we are met at the threshold of the consideration of the question of alleged error in overruling the plea to the jurisdiction, by the well settled rule in this State, that such pleas in cases whose venue had been changed, will not be entertained by the court to which the case was sent, or by this court, unless the matter complained of was preserved by proper bill of exceptions taken in the court *a quo*.  In the Krebs case, 8 Texas Crim. App., 1, it appears from the information, that when his case was called in the county to which it had been sent on a change of venue, the accused presented his sworn plea to the jurisdiction upon the ground that he was jointly indicted with others; that there had been no severance, and that he was not a party to and had never applied for, or consented to, a change of venue in his case, and that of right his case was still pend-

ing in the district court of the county from which it was sent. This Court held that the correctness of the ruling of the trial court upon the plea to the jurisdiction, would not be inquired into, because no objection was urged, and no exception taken by the accused in the District Court of the county from which the case was sent originally. Rothschild v. State, 7 Texas Crim. App., 519; Brown v. State, 6 Texas Crim. App., 266; Preston v. State, 4 Texas Crim. App., 186. No exception to the order entered was made in the district court of Kaufman County.

However, considering the matter for a moment, we feel inclined to approve certain expressions found in the opinion of Petty v. People, 8 N. E., 304, wherein the Supreme Court of Illinois, discussing a somewhat similar question, says "The object of naming the court is obviously to enable the accused to know of a certainty before which tribunal he must appear. This would seem almost indispensable where two or more courts exercising the same jurisdiction are in session at the same time and place; but, after all, if in any case sufficient appears in the recognizance to enable the accused to know, beyond a reasonable doubt, the tribunal before which he is required to appear, the object of naming the court in express terms is fully answered, whether so named or not. Such, we are of opinion, is the case here. We are satisfied the accused has not been misled by reason of the alleged defect in the recognizance, and to allow the objection to prevail would be, in our judgment, to defeat the ends of justice by a mere technicality. This ought not to be done."

It is apparent that it was the clear intention of the judge of the District Court of Kaufman County, to transfer this cause to a Criminal District Court in Dallas County. We judicially know that there are two Criminal District Courts in Dallas County, and that in the designation of only one of them does "Number 2" occur, and that is the court to which this cause was transferred, and by which it was tried. See Ellis v. State, 59 Texas Crim. Rep., 626; Malloy v. State, 35 Texas Crim. Rep., 389; Tillison v. State, 35 Texas Crim. Rep,. 388; Forbes v. State, 35 Texas Crim. Rep., 24. In our opinion, no error was committed in overruling said plea.

The only other grounds of the motion relate to what appellant thinks to be our error in holding correct the admission of evidence as to the details of the supposed death of appellant's wife by poisoning. We have carefully reviewed these matters, and adhere to our former ruling.

Being unable to agree with appellant in his contentions, the motion for rehearing will be overruled.

*Overruled.*