## SPENCER *v.* TEXAS.

No. 68.  Argued October 17–18, 1966.—Decided January 23, 1967.*

---

*Together with No. 69, *Bell* v. *Texas,* on certiorari to the Court of Criminal Appeals of Texas, argued October 17, 1966, and No. 70, *Reed* v. *Beto, Corrections Director,* on certiorari to the United States Court of Appeals for the Fifth Circuit, argued October 18, 1966.

*Michael D. Matheny,* by appointment of the Court, *post,* p. 896, argued the cause for appellant in No. 68. With him on the brief was *Joe B. Goodwin.* *Tom R. Scott* argued the cause and filed briefs for petitioner in No. 69. *Emmett Colvin, Jr.,* argued the cause for petitioner in No. 70. With him on the brief were *Charles W. Tessmer* and *Clyde W. Woody.*

*Leon Douglas* argued the cause for appellee in No. 68. With him on the brief were *Waggoner Carr,* Attorney General of Texas, and *Hawthorne Phillips,* First Assistant Attorney General. *Mr. Phillips* argued the cause for respondent in No. 69. With him on the briefs were *Mr. Carr, T. B. Wright,* Executive Assistant Attorney General, and *Lonny F. Zwiener, Gilbert J. Pena* and *Howard M. Fender,* Assistant Attorneys General. *Mr. Fender* argued the cause for respondent in No. 70. With him on the brief were *Messrs. Carr, Phillips, Wright, Pena* and *Zwiener.*

*T. W. Bruton,* Attorney General, *pro se,* and *Ralph Moody,* Deputy Attorney General, filed a brief for the Attorney General of North Carolina, as *amicus curiae,* in No. 69.

MR. JUSTICE HARLAN delivered the opinion of the Court.

Texas, reflecting widely established policies in the criminal law of this country, has long had on its books

so-called recidivist or habitual-criminal statutes. Their effect is to enhance the punishment of those found guilty of crime who are also shown to have been convicted of other crimes in the past. The three cases at hand challenge the procedures employed by Texas in the enforcement of such statutes.[1]

Until recently, and at the time of the convictions before us, the essence of those procedures was that, through allegations in the indictment and the introduction of proof respecting a defendant's past convictions, the jury trying the pending criminal charge was fully informed of such previous derelictions, but was also charged by the court that such matters were not to be taken into account in assessing the defendant's guilt or innocence under the current indictment.[2]

---

[1] The recidivist statutes here involved are Articles 62, 63, and 64 of the Texas Pen. Code (1952).

Article 62 provides: "If it be shown on the trial of a felony less than capital that the defendant has been before convicted of the same offense, or one of the same nature, the punishment on such second or other subsequent conviction shall be the highest which is affixed to the commission of such offenses in ordinary cases."

Article 63 provides: "Whoever shall have been three times convicted of a felony less than capital shall on such third conviction be imprisoned for life in the penitentiary."

Article 64 provides: "A person convicted a second time of any offense to which the penalty of death is affixed as an alternate punishment shall not receive on such second conviction a less punishment than imprisonment for life in the penitentiary."

[2] These procedures were embodied in Texas Code Crim. Proc. Art. 642 (1941), providing as follows: "A jury being impaneled in any criminal action, the cause shall proceed in the following order: 1. The indictment or information shall be read to the jury by the attorney prosecuting. . . . 4. The testimony on the part of the State shall be offered." By judicial gloss it appears that, at least in noncapital cases, a defendant by stipulating his prior convictions could keep knowledge of them away from the jury. See *Pitcock* v. *State*, 367 S. W. 2d 864. But see the decision below in *Spencer*, 389 S. W. 2d 304, for the inapplicability of the stipulation rule in

The facts in the cases now here are these. In *Spencer* (No. 68), the petitioner [3] was indicted for murder, with malice, of his common-law wife. The indictment alleged that the defendant had previously been convicted of murder with malice, a factor which if proved would entitle the jury to sentence the defendant to death or to prison for not less than life under Texas Pen. Code Art. 64, n. 1, *supra,* whereas if the prior conviction was not proved the jury could fix the penalty at death or a prison term of not less than two years, see Texas Pen. Code Art. 1257. Spencer made timely objections to the reading to the jury of that portion of the indictment, and objected as well to the introduction of evidence to show his prior conviction. The jury was charged that if it found that Spencer had maliciously killed the victim, and that he had previously been convicted of murder with malice, the jury was to "assess his punishment at death or confinement in the penitentiary for life." The jury was in-

capital cases. In the view we take of the constitutional issue before us we consider it immaterial whether or not that course was open to any of the petitioners. Subsequent to the present convictions Texas has passed a new law respecting the procedure governing recidivist cases, the effect of which seems to be that except in capital cases the jury is not given the recidivist issue until it has first found the defendant guilty under the principal charge. Texas Code Crim. Proc. Art. 36.01, effective January 1, 1966. Since these cases were all tried under the older procedure, the new statute is not before us.

[3] The question of whether *Spencer* is properly here as an appeal, a matter which we postponed to consideration of the merits, is a tangled one. See *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 U. S. 282; Hart & Wechsler, The Federal Courts and the Federal System 565–567 (1953). Rather than undertake to resolve it, we think it more profitable to dismiss this appeal, treat it as a petition for certiorari, 28 U. S. C. § 2103, and grant the petition, particularly as there is pending in the Court Spencer's timely filed alternative petition for certiorari, which has been held to await the outcome of this appeal. Accordingly we have in this opinion referred to Spencer as a "petitioner."

structed as well that it should not consider the prior conviction as any evidence of the defendant's guilt on the charge on which he was being tried. Spencer was found guilty and sentenced to death.

In *Bell* (No. 69), the petitioner was indicted for robbery, and the indictment alleged that he had been previously convicted of bank robbery in the United States District Court for the Southern District of Texas. Bell moved to quash the indictment on the ground, similar to that in *Spencer,* that the allegation and reading to the jury of a prior offense was prejudicial and would deprive him of a fair trial. Similar objections were made to the offer of documentary evidence to prove the prior conviction. The court's charge to the jury stated that the prior conviction should not be considered in passing upon the issue of guilt or innocence on the primary charge. The sentencing procedure in this noncapital case was somewhat different from that in *Spencer.* The jury was instructed that if it found the defendant guilty only of the present robbery charge, it could fix his sentence at not less than five years nor more than life. See Texas Pen. Code Art. 1408. But if it found that Bell had also been previously convicted as alleged in the indictment, it should bring in a verdict of guilty of robbery by assault and a further finding that the allegations "charging a final conviction for the offense of bank robbery are true." The jury so found, and the judge fixed punishment, set by law for such a prior offender, at life imprisonment in the penitentiary. See Texas Pen. Code Art. 62, note 1, *supra.*

The *Reed* case (No. 70),[4] involving a third-offender

---

[4] The *Reed* case, unlike the *Spencer* and *Bell* cases which come to us from the Court of Criminal Appeals of Texas, is here from a judgment of the United States Court of Appeals for the Fifth Circuit affirming the District Court's dismissal of a writ of habeas corpus on the ground that the Texas recidivist procedure did not offend the United States Constitution. 343 F. 2d 723.

prosecution for burglary, see Texas Pen. Code Art. 63, n. 1, *supra,* entailed the same practice as followed in *Bell.*

The common and sole constitutional claim made in these cases is that Texas' use of prior convictions in the current criminal trial of each petitioner was so egregiously unfair upon the issue of guilt or innocence as to offend the provisions of the Fourteenth Amendment that no State shall "deprive any person of life, liberty, or property, without due process of law . . . ." We took these cases for review, 382 U. S. 1022, 1023, 1025, because the courts of appeals have divided on the issue.[5] For reasons now to follow we affirm the judgments below.

The road to decision, it seems to us, is clearly indicated both by what the petitioners in these cases do *not* contend and by the course of the authorities in closely related fields. No claim is made here that recidivist statutes are themselves unconstitutional, nor could there be under our cases. Such statutes and other enhanced-sentence laws, and procedures designed to implement their underlying policies, have been enacted in all the States,[6] and by the Federal Government as well. See, *e. g.,* 18 U. S. C. § 2114; Fed. Rule Crim. Proc.

---

[5] The Third Circuit in *United States* v. *Banmiller,* 310 F. 2d 720, held a similar Pennsylvania procedure, when applied in capital cases, unconstitutional. The Fourth Circuit held a comparable Maryland recidivist practice unconstitutional in all cases. *Lane* v. *Warden,* 320 F. 2d 179. The Fifth Circuit in *Breen* v. *Beto,* 341 F. 2d 96, and again in the *Reed·* case before us today, 343 F. 2d 723, and the Eighth Circuit in *Wolfe* v. *Nash,* 313 F. 2d 393, have held such procedures constitutional. The Ninth Circuit in *Powell* v. *United States,* 35 F. 2d 941, sustained the procedure in the context of a second offense under § 29 of the National Prohibition Act, 41 Stat. 316.

[6] See annotations at 58 A. L. R. 20, 82 A. L. R. 345, 79 A. L. R. 2d 826; Note, Recidivist Procedures, 40 N. Y. U. L. Rev. 332 (1965).

32 (c)(2); D. C. Code § 22–104 (1961). Such statutes, though not in the precise procedural circumstances here involved, have been sustained in this Court on several occasions against contentions that they violate constitutional strictures dealing with double jeopardy, *ex post facto* laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities. *Moore* v. *Missouri,* 159 U. S. 673; *McDonald* v. *Massachusetts,* 180 U. S. 311; *Graham* v. *West Virginia,* 224 U. S. 616; *Gryger* v. *Burke,* 334 U. S. 728; *Oyler* v. *Boles,* 368 U. S. 448.

Nor is it contended that it is unconstitutional for the jury to assess the punishment to be meted out to a defendant in a capital or other criminal case, or to make findings as to whether there was or was not a prior conviction even though enhanced punishment is left to be imposed by the judge. The States have always been given wide leeway in dividing responsibility between judge and jury in criminal cases. *Hallinger* v. *Davis,* 146 U. S. 314; *Maxwell* v. *Dow,* 176 U. S. 581; cf. *Chandler* v. *Fretag,* 348 U. S. 3; *Giaccio* v. *Pennsylvania,* 382 U. S. 399, 405, n. 8.

Petitioners do not even appear to be arguing that the Constitution is infringed if a jury is told of a defendant's prior crimes. The rules concerning evidence of prior offenses are complex, and vary from jurisdiction to jurisdiction, but they can be summarized broadly. Because such evidence is generally recognized to have potentiality for prejudice, it is usually excluded except when it is particularly probative in showing such things as intent, *Nye & Nissen* v. *United States,* 336 U. S. 613, *Ellisor* v. *State,* 162 Tex. Cr. R. 117, 282 S. W. 2d 393; an element in the crime, *Doyle* v. *State,* 59 Tex. Cr. R. 39, 126 S. W. 1131; identity, *Chavira* v. *State,* 167 Tex. Cr. R. 197, 319 S. W. 2d 115; malice, *Moss* v. *State,* 364 S. W. 2d 389; motive, *Moses* v. *State,* 168 Tex.

Cr. R. 409, 328 S. W. 2d 885; a system of criminal activity, *Haley* v. *State,* 87 Tex. Cr. R. 519, 223 S. W. 202; or when the defendant has raised the issue of his character, *Michelson* v. *United States,* 335 U. S. 469, *Perkins* v. *State,* 152 Tex. Cr. R. 321, 213 S. W. 2d 681; or when the defendant has testified and the State seeks to impeach his credibility, *Giacone* v. *State,* 124 Tex. Cr. R. 141, 62 S. W. 2d 986.[7]

Under Texas law the prior convictions of the defendants in the three cases before the Court today might have been admissible for any one or more of these universally accepted reasons. In all these situations, as under the recidivist statutes, the jury learns of prior crimes committed by the defendant, but the conceded possibility of prejudice is believed to be outweighed by the validity of the State's purpose in permitting introduction of the evidence. The defendants' interests are protected by limiting instructions, see *Giacone* v. *State, supra,* and by the discretion residing with the trial judge to limit or forbid the admission of particularly prejudicial evidence even though admissible under an accepted rule of evidence. See *Spears* v. *State,* 153 Tex. Cr. R.

---

[7] These Texas cases reflect the rules prevailing in nearly all common-law jurisdictions. See generally McCormick, Evidence §§ 157–158 (1954); 1 Wharton's Criminal Evidence §§ 221–243 (Anderson ed. 1955); 1 Wigmore, Evidence §§ 215–218 (3d ed. 1940 and 1964 Supp.); Note, Other Crimes Evidence at Trial, 70 Yale L. J. 763 (1961). For the English rules, substantially similar, see Cross, Evidence 292–333 (2d ed. 1963). Recent commentators have criticized the rule of general exclusion, and have suggested a broader range of admissibility. Model Code of Evidence, Rule 311; Carter, The Admissibility of Evidence of Similar Facts, 69 L. Q. Rev. 80 (1953), 70 L. Q. Rev. 214 (1954); Note, Procedural Protections of the Criminal Defendant, 78 Harv. L. Rev. 426, 435–451 (1964). For the use of this type of evidence in continental jurisdictions, see Glanville Williams, The Proof of Guilt 181 (2d ed. 1958); 1 Wigmore, *supra,* § 193.

14, 216 S. W. 2d 812; 1 Wigmore, Evidence § 29a (3d ed. 1940); Uniform Rule of Evidence 45; Model Code of Evidence, Rule 303.

This general survey sufficiently indicates that the law of evidence, which has been chiefly developed by the States, has evolved a set of rules designed to reconcile the possibility that this type of information will have some prejudicial effect with the admitted usefulness it has as a factor to be considered by the jury for any one of a large number of valid purposes. The evidence itself is usually, and in recidivist cases almost always, of a documentary kind, and in the cases before us there is no claim that its presentation was in any way inflammatory. Compare *Marshall* v. *United States,* 360 U. S. 310. To say the United States Constitution is infringed simply because this type of evidence may be prejudicial and limiting instructions inadequate to vitiate prejudicial effects, would make inroads into this entire complex code of state criminal evidentiary law, and would threaten other large areas of trial jurisprudence. For example, all joint trials, whether of several codefendants or of one defendant charged with multiple offenses, furnish inherent opportunities for unfairness when evidence submitted as to one crime (on which there may be an acquittal) may influence the jury as to a totally different charge. See *Delli Paoli* v. *United States,* 352 U. S. 232; cf. *Opper* v. *United States,* 348 U. S. 84; *Krulewitch* v. *United States,* 336 U. S. 440. This type of prejudicial effect is acknowledged to inhere in criminal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person, and connected crimes against different defendants, in the same trial is a valid governmental interest.

Such an approach was in fact taken by the Court in *Michelson* v. *United States,* 335 U. S. 469. There, in a federal prosecution, the Government was permitted to cross-examine defense witnesses as to the defendant's character and to question them about a prior conviction. The Court, recognizing the prejudicial effect of this evidence, noted that "limiting instructions on this subject are no more·difficult to comprehend or apply than those upon various other subjects," *id.,* at 485, and held that this Court was not the best forum for developing rules of evidence, and would, therefore, not proscribe the longstanding practice at issue. *A fortiori,* this reasoning applies in the cases before us today which arise not under what has been termed the supervisory power of this Court over proceedings in the lower federal courts, see *Cheff* v. *Schnackenberg,* 384 U. S. 373, but in the form of a constitutional claim that would require us to fashion rules of procedure and evidence in state courts. It is noteworthy that nowhere in *Michelson* did the Court or dissenting opinions approach the issue in constitutional terms.

It is contended nonetheless that in this instance the Due Process Clause of the Fourteenth Amendment requires the exclusion of prejudicial evidence of prior convictions even though limiting instructions are given and even though a valid state purpose—enforcement of the habitual-offender statute—is served. We recognize that the use of prior-crime evidence in a one-stage recidivist trial may be thought to represent a less cogent state interest than does its use for other purposes, in that other procedures for applying enhancement-of-sentence statutes may be available to the State that are not suited in the other situations in which such evidence is introduced. We do not think that this distinction should lead to a different constitutional result.

Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental

elements of fairness in a criminal trial.  See, *e. g., Tumey* v. *Ohio,* 273 U. S. 510; *Betts* v. *Brady,* 316 U. S. 455; cf. *Gideon* v. *Wainwright,* 372 U. S. 335; see *Estes* v. *Texas,* 381 U. S. 532; *Sheppard* v. *Maxwell,* 384 U. S. 333; cf. *Griffin* v. *Illinois,* 351 U. S. 12.  But it has never been thought that such cases establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure.  And none of the specific provisions of the Constitution ordains this Court with such authority.  In the face of the legitimate state purpose and the long-standing and widespread use that attend the procedure under attack here, we find it impossible to say that because of the possibility of some collateral prejudice the Texas procedure is rendered unconstitutional under the Due Process Clause as it has been interpreted and applied in our past cases.  As Mr. Justice Cardozo had occasion to remark, a state rule of law "does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at bar."  *Snyder* v. *Massachusetts,* 291 U. S. 97, 105.  See also *Buchalter* v. *New York,* 319 U. S. 427.

Petitioners' reliance on *Jackson* v. *Denno,* 378 U. S. 368, is misplaced.  There the Court held unconstitutional the New York procedure leaving to the trial jury alone the issue of the voluntariness of a challenged confession, an area of law that has been characterized by the development of particularly stiff constitutional rules. See *Rogers* v. *Richmond,* 365 U. S. 534; *Miranda* v. *Arizona,* 384 U. S. 436.  The Court held that a judicial ruling was first required to determine whether as a matter of law—federal constitutional law—the confession could be deemed voluntary.  This requirement of a threshold hearing before a judge on the federal question of voluntariness lends no solid support to the argument made here—that a two-stage jury trial is required when-

ever a State seeks to invoke an habitual-offender statute. It is true that the Court in *Jackson* supported its holding by reasoning that a general jury verdict was not a "reliable" vehicle for determining the issue of voluntariness because jurors might have difficulty in separating the issues of voluntariness from that of guilt or innocence. But the emphasis there was on protection of a specific constitutional right, and the *Jackson* procedure was designed as a specific remedy to ensure that an involuntary confession was not in fact relied upon by the jury. In the procedures before us, in contrast, no specific federal right—such as that dealing with confessions—is involved; reliance is placed solely on a general "fairness" approach. In this area the Court has always moved with caution before striking down state procedures. It would be extravagant in the extreme to take *Jackson* as evincing a general distrust on the part of this Court of the ability of juries to approach their task responsibly and to sort out discrete issues given to them under proper instructions by the judge in a criminal case, or as standing for the proposition that limiting instructions can never purge the erroneous introduction of evidence or limit evidence to its rightful purpose. Compare *Opper* v. *United States,* 348 U. S. 84; *Leland* v. *Oregon,* 343 U. S. 790.[8]

It is fair to say that neither the *Jackson* case nor any other due process decision of this Court even remotely supports the proposition that the States are not free to enact habitual-offender statutes of the type Texas

---

[8] Indeed the most recent scholarly study of jury behavior does not sustain the premise that juries are especially prone to prejudice when prior-crime evidence is admitted as to credibility. Kalven & Zeisel, The American Jury (1966). The study contrasts the effect of such evidence on judges and juries and concludes that "Neither the one nor the other can be said to be distinctively gullible or skeptical." *Id.,* at 180.

has chosen and to admit evidence during trial tending to prove allegations required under the statutory scheme.

Tolerance for a spectrum of state procedures dealing with a common problem of law enforcement is especially appropriate here. The rate of recidivism is acknowledged to be high,[9] a wide variety of methods of dealing with the problem exists, and experimentation is in progress. The common-law procedure for applying recidivist statutes, used by Texas in the cases before us, which requires allegations and proof of past convictions in the current trial, is, of course, the simplest and best known procedure.[10] Some jurisdictions deal with the recidivist issue in a totally separate proceeding, see, *e. g., Oyler* v. *Boles,* 368 U. S. 448, and as already observed (n. 2, *supra*) Texas to some extent has recently changed to that course. In some States such a proceeding can be instituted even after conviction on the new substantive offense, see Ore. Rev. Stat. § 168.040 (1959); *Graham* v. *West Virginia,* 224 U. S. 616. The method for determining prior convictions varies also between jurisdictions affording a jury trial on this issue, *e. g.,* Fla. Stat. Ann. § 775.11 (1965); and those leaving that question to the court, see, *e. g.,* Fed. Rule Crim. Proc. 32 (a); Mo. Rev. Stat. § 556.280 (2) (1959).[11] Another procedure,

---

[9] See "Careers in Crime," a statistical survey collected in Uniform Crime Reports for the United States—1965, p. 27 (Dept. of Justice, 1966). The Statistical Abstract of the United States, 1966, reveals that 62% of prisoners committed to federal prisons in the year ending June 30, 1965, had been previously committed. *Id.,* at 163.

[10] For a survey and analysis of the various recidivist procedures, see Note, Recidivist Procedures, 40 N. Y. U. L. Rev. 332 (1965); see also Note, The Pleading and Proof of Prior Convictions in Habitual Criminal Prosecutions, 33 N. Y. U. L. Rev. 210 (1958).

[11] Texas juries have had authority to impose punishment since 1846, but in all but 11 States this power is held by the judge. See Reid, The Texas Code of Criminal Procedure, 44 Tex. L. Rev. 983, 1008–1009 (1966).

used in Great Britain and Connecticut, see Coinage Offences Act, 1861, 24 & 25 Vict., c. 99; *State* v. *Ferrone,* 96 Conn. 160, 113 A. 452, requires that the indictment allege both the substantive crime and the prior conviction, that both parts be read to the defendant prior to trial, but that only the allegations relating to the substantive crime be read to the jury. If the defendant is convicted, the prior-offense elements are then read to the jury which considers any factual issues raised. Yet another system relies upon the parole authorities to withhold parole in accordance with their findings as to prior convictions. See, *e. g.,* N. J. Stat. Ann. § 30:4–123.12 (1964). And within each broad approach described, other variations occur.

A determination of the "best" recidivist trial procedure necessarily involves a consideration of a wide variety of criteria, such as which method provides most adequate notice to the defendant and an opportunity to challenge the accuracy and validity of the alleged prior convictions, which method best meets the particular jurisdiction's allocation of responsibility between court and jury, which method is best accommodated to the State's established trial procedures, and of course which method is apt to be the least prejudicial in terms of the effect of prior-crime evidence on the ultimate issue of guilt or innocence. To say that the two-stage jury trial in the English-Connecticut style is probably the fairest, as some commentators and courts have suggested,[12] and with which we might well agree were the

---

[12] See, *e. g., Lane* v. *Warden,* 320 F. 2d 179; Note, 40 N. Y. U. L. Rev. 332, 348 (1965). Other commentators have cautioned against a too hasty adoption of the two-stage trial. See the Second Circuit decision in *United States* v. *Curry,* 358 F. 2d 904, 914–915, where the court discussed the procedure as it applied in federal capital cases, and concluded: "Given the many considerations which may affect the necessity for a two-stage trial in each case, and considering the

matter before us in a legislative or rule-making context, is a far cry from a constitutional determination that this method of handling the problem is compelled by the Fourteenth Amendment. Two-part jury trials are rare in our jurisprudence; they have never been compelled by this Court as a matter of constitutional law, or even as a matter of federal procedure.[13] With recidivism the major problem that it is, substantial changes in trial procedure in countless local courts around the country would be required were this Court to sustain the contentions made by these petitioners. This we are unwilling to do. To take such a step would be quite beyond the pale of this Court's proper function in our federal system. It would be a wholly unjustifiable encroachment by this Court

questionable desirability of this untested technique, we think it best to leave this question to the discretion of the trial court." See also the discussion of the practical and administrative disadvantages of such a procedure in *Frady* v. *United States*, 121 U. S. App. D. C. 78, 108–109, 348 F. 2d 84, 114–115 (dissenting opinion). We have been presented with no positive information concerning actual experience with a separate penalty procedure that would bear on a decision to impose it upon all the States as a matter of constitutional law. One study suggests that as a practical matter such a procedure has not proved helpful to defendants: "The California experience, dating back to 1957, has rather been that defense counsel have often neglected to prepare adequately for the penalty phase and have exhibited a lack of sophistication concerning what facts should be advanced as mitigating. Apparently, the approach of defense lawyers has been to devote the bulk of their efforts to the substantive issue of guilt and to relegate the penalty phase to a minor role. On the other hand, the prosecution has taken complete advantage of the penalty phase and has attempted to marshal and to present to the jury all of the aggravating circumstances that exist." Note, Executive Clemency in Capital Cases, 39 N. Y. U. L. Rev. 136, 167 (1964).

[13] In cases where, as in *Spencer*, a jury itself fixes the penalty, the effect of the emphasis in THE CHIEF JUSTICE's separate opinion upon the use of a stipulation would in reality be to require, as a matter of federal constitutional law, a two-stage jury trial. For a stipulation no less than evidentiary proof would bring the fact of prior convictions before the trial jury.

upon the constitutional power of States to promulgate their own rules of evidence to try their own state-created crimes in their own state courts, so long as their rules are not prohibited by any provision of the United States Constitution, which these rules are not. The judgments in these cases are

*Affirmed.*

MR. JUSTICE STEWART, concurring.

If the Constitution gave me a roving commission to impose upon the criminal courts of Texas my own notions of enlightened policy, I would not join the Court's opinion. For it is clear to me that the recidivist procedures adopted in recent years by many other States [1]— and by Texas herself since January 1 of last year [2]—are far superior to those utilized in the cases now before us. But the question for decision is not whether we applaud or even whether we personally approve the procedures followed in these recidivist cases. The question is whether those procedures fall below the minimum level the Fourteenth Amendment will tolerate. Upon that question I am constrained to join the opinion and judgment of the Court.

MR. CHIEF JUSTICE WARREN, with whom MR. JUSTICE FORTAS concurs, dissenting in Nos. 68 and 69, and concurring in No. 70.

It seems to me that the only argument made by the Court which might support its disposition of these cases is the amorphous one that this Court should proceed hesitantly in dealing with courtroom procedures which are alleged to violate the Due Process Clause of the Fourteenth Amendment. It attempts to bolster its decision with arguments about the conceded validity of the purpose of recidivist statutes and by pointing to occa-

---

[1] See opinion of THE CHIEF JUSTICE, *post,* at 586, n. 11.

[2] See opinion of the Court, *ante,* at 556, n. 2.

sions when evidence of prior crimes is traditionally admitted to serve a specific purpose related to finding guilt or innocence. For the reasons which I shall discuss, I do not find in these two arguments support for the decision. Nor am I persuaded by its cautious attitude toward this procedure. I recognize that the criteria for decision in procedural due process cases are necessarily drawn from the traditional jurisprudential attitudes of our legal system rather than from a relatively specific constitutional command. However, this Court has long recognized the central importance of courtroom procedures in maintaining our constitutional liberties. As Mr. Justice Frankfurter often reminded us, the history of individual liberty is largely coincident with the history of observance of procedural safeguards, *Joint Anti-Fascist Refugee Committee* v. *McGrath,* 341 U. S. 123, concurring opinion of Frankfurter, J., at 164.

It seems to me that the use of prior-convictions evidence in these cases is fundamentally at odds with traditional notions of due process, not because this procedure is not the nicest resolution of conflicting but legitimate interests of the State and the accused, but because it needlessly prejudices the accused without advancing any legitimate interest of the State. If I am wrong in thinking that the introduction of prior-convictions evidence serves no valid purpose I am not alone, for the Court never states what interest of the State is advanced by this procedure. And this failure, in my view, undermines the logic of the Court's opinion.

There is much said about the valid purpose of enhanced punishment for repeating offenders, with which I agree, and about the variety of occasions in criminal trials in which prior-crimes evidence is admitted as having some relevance to the question of guilt or innocence. But I cannot find support for this procedure in either the purposes of recidivist statutes or by analogy to the

traditional occasions where prior-crimes evidence is admitted. And the Court never faces up to the problem of trying to justify this recidivist procedure on the ground that the State would not violate due process if it used prior convictions simply as evidence of guilt because it showed criminal propensity.

Recidivist statutes have never been thought to allow the State to show probability of guilt because of prior convictions. Their justification is only that a defendant's prior crimes should lead to enhanced punishment for any subsequent offenses. Recidivist statutes embody four traditional rationales for imposing penal sanctions.[1] A man's prior crimes are thought to aggravate his guilt for subsequent crimes, and thus greater than usual retribution is warranted. Similarly, the policies of insulating society from persons whose past conduct indicates their propensity to criminal behavior, of providing deterrence from future crime, and of rehabilitating criminals are all theoretically served by enhanced punishment according to recidivist statutes. ' None of these four traditional justifications for recidivist statutes is related in any way to the burden of proof to which the State is put to prove that a crime has currently been committed by the alleged recidivist. The fact of prior convictions is not intended by recidivist statutes to make it any easier for the State to prove the commission of a subsequent crime. The State does not argue in these cases that its statutes are, or constitutionally could be, intended to allow the prosecutor to introduce prior convictions to show the accused's criminal disposition. But the Court's opinion seems to accept, without discussion, that this use of prior-crimes evidence would be consistent with due process.

The amended Texas procedure is the nearest demonstration that none of the interests served by recidivist

---

[1] See generally Note, Recidivist Procedures, 40 N. Y. U. L. Rev. 332 (1965).

statutes is advanced by presentation of prior-crimes evidence before the defendant has been found guilty. Under current statutory law,[2] effective since January 1, 1966, and therefore not involved in these cases, in felony cases the jury first decides the question of guilt or innocence of the crime currently charged, and only after the defendant is found guilty of the current crime is evidence presented on the entirely separate question of whether the defendant has been previously convicted of a crime which places him within the scope of a recidivist statute requiring enhanced punishment. Under the old Texas procedure involved in these cases, just as under the new procedure, the fact of prior convictions is relevant only to the question of enhanced punishment. Recidivist statutes have nothing whatever to do with the method by which the State shows that an accused has committed a crime.

Whether or not a State has recidivist statutes on its books, it is well established that evidence of prior convictions may not be used by the State to show that the accused has a criminal disposition and that the probability that he committed the crime currently charged is increased.[3] While this Court has never held

---

[2] Texas Code Crim. Proc. Art. 36.01, effective January 1, 1966. The new two-stage procedure does not apply in capital cases, the reason for the distinction apparently being because in capital cases the jury has a choice of punishment under the applicable recidivist statute. The validity of this distinction will be discussed below.

[3] Professor McCormick states:

"The rule is that the prosecution may not introduce evidence of other criminal acts of the accused unless the evidence is substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character." McCormick, Evidence § 157 (1954 ed.).

Dean Wigmore agrees with this statement of the general rule of exclusion, 1 Wigmore, Evidence §§ 193–194 (3d ed. 1940). As Wigmore points out, evidence of prior crimes is objectionable, not because it is not somewhat probative, but because the jury is likely to

that the use of prior convictions to show nothing more than a disposition to commit crime would violate the Due Process Clause of the Fourteenth Amendment, our decisions exercising supervisory power over criminal trials in federal courts,[4] as well as decisions by courts of

give it more weight than it deserves and might decide that the defendant deserves to be punished because of the past crime without regard to whether he is guilty of the crime currently charged.

[4] See, e. g., Marshall v. United States, 360 U. S. 310 (1959); Michelson v. United States, 335 U. S. 469 (1948); Boyd v. United States, 142 U. S. 450 (1892).

In Michelson, the Court stated:

"Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, Greer v. United States, 245 U. S. 559, but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." 335 U. S., at 475–476.

In Marshall, the Court reversed a conviction where it was shown that newspaper accounts of the defendant's prior convictions had been seen by a substantial number of jurors. The Court stated:

". . . We have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence. The prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence." 360 U. S., at 312–313.

In Boyd, the defendants were charged with murder following an attempt to rob, and the prosecution introduced evidence that the defendants had committed other robberies before the one involved

appeals [5] and of state courts,[6] suggest that evidence of prior crimes introduced for no purpose other than to show criminal disposition would violate the Due Process Clause.

in the crime charged. The Court, in an opinion by the first Mr. Justice Harlan, held the evidence of other crimes inadmissible:

". . . Those robberies may have been committed by the defendants in March, and yet they may have been innocent of the murder of Dansby in April. Proof of them only tended to prejudice the defendants with the jurors, to draw their minds away from the real issue, and to produce the impression that they were wretches whose lives were of no value to the community, and who were not entitled to the full benefit of the rules prescribed by law for the trial of human beings charged with crime involving the punishment of death." 142 U. S., at 458.

[5] See, e. g., Lovely v. United States, 169 F. 2d 386, 389 (C. A. 4th Cir. 1948):

"The rule which thus forbids the introduction of evidence of other offenses having no reasonable tendency to prove the crime charged, except in so far as they may establish a criminal tendency on the part of the accused, is not a mere technical rule of law. It arises out of the fundamental demand for justice and fairness which lies at the basis of our jurisprudence. If such evidence were allowed, not only would the time of courts be wasted in the trial of collateral issues, but persons accused of crime would be greatly prejudiced before juries and would be otherwise embarrassed in presenting their defenses on the issues really on trial."

Railton v. United States, 127 F. 2d 691, 693 (C. A. 5th Cir. 1942):

". . . It is logical to conclude, and very apt to be concluded, that because a man was dishonest once he will steal again. It is certainly 'more probable' that a crooked official did steal than if he were an upright one. Yet our law forbids these very premises. It cannot be shown that the accused has committed other similar crimes to show that it is probable he committed the one charged."

Cf. also Tedesco v. United States, 118 F. 2d 737 (C. A. 9th Cir. 1941); Swann v. United States, 195 F. 2d 689 (C. A. 4th Cir. 1952); United States v. Jacangelo, 281 F. 2d 574 (C. A. 3d Cir. 1960).

[6] Texas recognizes this general rule, Seay v. State, 395 S. W. 2d 40. Other typical decisions are People v. Molineux, 168 N. Y. 264, 61 N. E. 286 (1901); State v. Scott, 111 Utah 9, 175 P. 2d 1016 (1947). See also State v. Myrick, 181 Kan. 1056, 317 P. 2d 485 (1957); Scarbrough v. State, 204 Miss. 487, 37 So. 2d 748 (1948).

Evidence of prior convictions has been forbidden because it jeopardizes the presumption of innocence of the crime currently charged. A jury might punish an accused for being guilty of a previous offense, or feel that incarceration is justified because the accused is a "bad man," without regard to his guilt of the crime currently charged. Of course it flouts human nature to suppose that a jury would not consider a defendant's previous trouble with the law in deciding whether he has committed the crime currently charged against him. As Mr. Justice Jackson put it in a famous phrase, "[t]he naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction." *Krulewitch* v. *United States,* 336 U. S. 440, 453 (concurring opinion) (1949). *United States* v. *Banmiller,* 310 F. 2d 720, 725 (C. A. 3d Cir. 1962). Mr. Justice Jackson's assessment has received support from the most ambitious empirical study of jury behavior that has been attempted, see Kalven & Zeisel, The American Jury 127–130, 177–180.

Recognition of the prejudicial effect of prior-convictions evidence has traditionally been related to the requirement of our criminal law that the State prove beyond a reasonable doubt the commission of a specific criminal act. It is surely engrained in our jurisprudence that an accused's reputation or criminal disposition is no basis for penal sanctions. Because of the possibility that the generality of the jury's verdict might mask a finding of guilt based on an accused's past crimes or unsavory reputation, state and federal courts have consistently refused to admit evidence of past crimes except in circumstances where it tends to prove something other than general criminal disposition.

As I have stated, I do not understand the opinion to assert that this Court would find consistent with due process the admission of prior-crimes evidence for no

purpose other than what probative value it has bearing on an accused's disposition to commit a crime currently charged. It ignores this issue, and points out that evidence of prior crimes in other contexts has not been thought so prejudicial that it cannot be admitted to serve a particular valid purpose. Thus, past crimes may be used to show a common design between a past crime and one currently charged, to show the distinctive handiwork of the defendant, or to show that the act presently at issue was probably not unintentional.[7] We need not disagree with the admission of evidence of prior convictions in cases such as these, because past convictions are directly relevant to the question of guilt or innocence of the crime currently charged. It is admitted because its probative value, going to elements of the current charges, is so strong that it outweighs the prejudice inherent in evidence of prior crimes. Also, as the Court further points out, evidence of prior crimes has traditionally been admitted to either impeach the defendant's credibility when he testifies in his own behalf, or to counteract evidence introduced by the defendant as to his good character. In each of these situations, the possibility of prejudice resulting from the evidence of prior convictions is thought to be outweighed by the legitimate purposes served by the evidence. When a defendant attempts to convince the jury of his innocence by showing it that he is a person of such character that it is unlikely that he committed the crime charged, the State has a legitimate interest in counteracting this evidence of good character by showing that the accused has been previously convicted. The defendant has initiated the inquiry into his reputation, and the State should be allowed to respond to this general character evidence as best it can.

---

[7] See generally exceptions set out in McCormick, Evidence § 157.

Similarly, when prior convictions are introduced to impeach the credibility of a defendant who testifies, a specific purpose is thought to be served. The theory is that the State should be permitted to show that the defendant-witness' credibility is qualified by his past record of delinquent behavior. In other words, the defendant is put to the same credibility test as any other witness. A defendant has some control over the State's opportunity to introduce this evidence in that he may decide whether or not to take the stand. Moreover, the jury hears of the prior convictions following a defendant's testimony, and it may be thought that this trial context combined with the usual limiting instruction results in the jury's actually behaving in accordance with the theory of limiting instructions: that is, that the prior convictions are only taken into account in assessing the defendant's credibility.

Although the theory justifying admission of evidence of prior convictions to impeach a defendant's credibility has been criticized,[8] all that is necessary for purposes of deciding this case is to accept its theoretical justification and to note the basic difference between it and the Texas recidivist procedure. In the case of impeachment, as in all the examples cited by the Court, the prior convictions are considered probative for a limited purpose which is relevant to the jury's finding of guilt or innocence. This purpose is, of course, completely different from the purpose for which prior convictions are admitted in recidivist cases, where there is no connection between the evidence and guilt or innocence.

In all the situations pointed out by the Court, the admission of prior-crimes evidence rests on a conclusion that the probative value of the evidence outweighs the

---

[8] See, *e. g.*, Note, Other Crimes Evidence at Trial: of Balancing and Other Matters, 70 Yale L. J. 763 (1961).

conceded possibility of prejudice. There is no middle position between the alternatives of admission or exclusion because, if the evidence is to serve the purpose for which it is considered probative, it must be admitted before the jury decides whether the defendant is guilty or innocent. The problem thus becomes the delicate one of balancing probative value against the possibility of prejudice, and the result for most state and federal courts (including this Court in the exercise of its supervisory power over proceedings in federal courts) has been that the trial judge is given discretion to draw the balance in the context of the trial. In view of this uniform tradition, it is apparent that prior-convictions evidence introduced for certain specific purposes relating to the determination of guilt or innocence, other than to show a general criminal disposition, would not violate the Due Process Clause.

From these situations where the probative value of prior convictions evidence is thought to outweigh its prejudicial impact, the Court draws the legitimate conclusion that prior-convictions evidence is not so inherently prejudicial that its admission is invariably prohibited. It combines this premise with the concededly valid purpose of recidivist statutes to produce the following logic: since prior-crimes evidence may be admitted at the guilt phase of a trial where the admission serves a valid purpose and since the purpose of recidivist statutes is valid, prior crimes may be proven in the course of the guilt phase of a trial in order that the jury may also assess whether a defendant, if found guilty, should be sentenced to an enhanced punishment under recidivist statutes. I believe this syllogism is plausible only on the surface, because the Court's premises do not combine to justify its far-reaching result. I believe the Court has fallen into the logical fallacy sometimes known as the fallacy of the undistributed middle, because it has failed to examine the

supposedly shared principle between admission of prior crimes related to guilt and admission in connection with recidivist statutes.[9] That the admission in both situations may serve a valid purpose does not demonstrate that the former practice justifies the latter any more than the fact that men and dogs are animals means that men and dogs are the same in all respects.

Unlike the purpose for the admission of prior-convictions evidence in all the examples cited by the Court, the admission in connection with enhancing punishment for repeating offenders has nothing whatever to do with the question of guilt or innocence of the crime currently charged. Because of the complete irrelevance of prior convictions to the question of guilt or innocence, the recidivist situation is not one where the trial courts are called upon to balance the probative value of prior convictions against their prejudicial impact. The purpose of admitting prior-convictions evidence should be served and prejudice completely avoided by the simple expedient of a procedure which reflects the exclusive relevance of recidivist statutes to the issue of proper punishment. Only after a defendant has been found guilty does the question of whether he fits the recidivist category become relevant to the sentence, and any issue of fact as to his prior convictions should then be decided by the jury.

The availability of this procedural alternative, through which the interests of the State as reflected in its recidivist statutes can be fully effectuated while prejudice to the defendant is avoided, means that the only interest the State may offset against the possibility of prejudice to justify introducing evidence of prior crimes in these cases is the inconvenience which would result from postponing a determination that the defendant falls within a recidivist category until after the jury has found him guilty of the crime currently charged. However, for the

[9] See Stebbing, A Modern Introduction to Logic 88 (6th ed. 1948).

purpose of deciding these cases, it is not necessary to consider whether the State's convenience in not conducting a two-stage trial justifies the prejudice which ensues when prior convictions are presented to a jury before it has decided whether the defendant is guilty of the crime charged. For the fact is that Texas has not even this matter of convenience in the method used to find facts regarding prior convictions to balance against the prejudice which ensues from the admission of this prior-convictions evidence. In No. 68, *Spencer* v. *Texas,* the defendant offered to stipulate to the truth of that portion of the indictment which alleged that he had been previously convicted of a crime which put him within the scope of a recidivist statute. The prosecutor refused to accept this stipulation, and the Texas courts allowed proof of the prior conviction to be presented to the jury on the ground that, under the recidivist statute dealing with capital crimes, the jury has a choice between the death penalty and life imprisonment. The courts reasoned that the existence of the prior conviction was information which the jury would find relevant in determining sentence. Of course, the offered stipulation dispensed completely with the need for the State to have the fact of prior crimes found by the jury to determine whether a recidivist statute applied to the defendant. Instead, the State tries to justify the refusal to accept the stipulation on the ground that it was relevant to the jury's discretion in ordering the death penalty. But this rationale would justify letting the jury hear, before determining guilt or innocence, all kinds of evidence which might be relevant to sentencing but which has traditionally been considered extremely prejudicial if admitted during the guilt phase of a trial. Thus, this argument would justify admitting probation reports, all kinds of hearsay evidence about the defendant's past, medical and psychiatric reports, and virtually anything else which might seem relevant to the

broad discretion exercised in sentencing. The Court evidently believes that it is consistent with due process for a State to introduce evidence of a kind traditionally considered prejudicial which is relevant only to sentencing discretion in a single-stage trial before a finding of guilt. This seems to me the only possible ground for affirming No. 68, since it is obvious that the offer of stipulation removes the need for a finding of fact as to the prior conviction in connection with the recidivist statute.

I would reverse No. 68 and remand for a new trial. For me, the State's refusal to accept the stipulation removes any vestige of legitimate interest it might have to balance against the prejudice to the accused. To nevertheless admit the evidence seems to me entirely inconsistent with the way evidence of prior convictions is traditionally handled in our legal system.

What I have said about the State's lack of interest in introducing this evidence when the defendant tries to stipulate to the prior conviction seems to me to apply equally to defendants under the Texas procedure who were not offered the opportunity of stipulating to their prior convictions. Because of the unclear state of the law in Texas as to the right to have such a stipulation accepted, the failure of a defendant to volunteer a stipulation cannot be interpreted as indicative of what would have happened if the State made stipulation a right. The Texas Court of Criminal Appeals approved a stipulation procedure for felony cases in *Pitcock* v. *State,* 367 S. W. 2d 864 (1963), on the convincing ground that, because the recidivist statutes in felony cases provided for automatic sentencing, a stipulation resolved all issues for which the prior convictions were relevant. As the court put it: "[t]o allow its introduction, after such stipulation, resolves no issue and may result in prejudice to the accused." 367 S. W. 2d, at 865. However, two later cases held that refusal by the prosecutor to accept a

stipulation, and the introduction of evidence to the jury of prior convictions over an offer of stipulation, was not reversible error. See *Sims* v. *State,* 388 S. W. 2d 714 (1965); *Ross* v. *State,* 401 S. W. 2d 844 (1966). Thus, the Texas courts reduced the stipulation procedure to an admonition to the prosecutor, and allowed refusal of the stipulation even though in felony cases the only conceivable reason the prosecutor could have for refusing was to have the benefit of the prejudicial impact of presenting prior convictions to the jury.

Because the stipulation procedure had become merely a matter of prosecutorial discretion, the petitioners in Nos. 69 and 70 cannot be said to have waived any right to stipulate their prior convictions, and it seems to me that, in the absence of a stipulation right, they must be regarded in the same light as the petitioner in No. 68, whose offer of stipulation was refused. If a defendant's offer of stipulation removes any legitimate interest the State might otherwise have in presenting prior convictions to the jury for recidivist purposes, and makes the introduction inconsistent with due process, then it seems to me that the protection of the Due Process Clause should not be limited according to whether a defendant actually explored the chance that a prosecutor might accept an offer of stipulation. Since a stipulation procedure would completely effectuate the minimal state interest in having facts found under its recidivist statutes without the inconvenience of a two-part trial, while at the same time offering a defendant the chance to prevent the possibility of prejudice, it seems to me that due process requires this safeguard.

If the admission of prior-convictions evidence solely for the purpose of enhancing punishment in the event a defendant is found guilty violates due process when the defendant is not given the right of conceding the prior-convictions evidence to prevent its admission, peti-

tioners' convictions in Nos. 68 and 69 must be reversed. No. 70, however, raises the question of whether a decision that the old Texas procedure violates due process should be retroactively applied to convictions which are final but which are collaterally attacked in the federal courts by habeas corpus. Considerations of fundamental fairness have led to the opening of final judgments in criminal cases when it has appeared that a conviction was achieved in violation of basic constitutional standards. Thus, in the decisions which have been applied retroactively, *Gideon* v. *Wainwright,* 372 U. S. 335 (1963); *Douglas* v. *California,* 372 U. S. 353 (1963); *Griffin* v. *Illinois,* 351 U. S. 12 (1956); and *Jackson* v. *Denno,* 378 U. S. 368 (1964), the Court concluded that the constitutional error perceived undermined "the very integrity of the fact-finding process," *Linkletter* v. *Walker,* 381 U. S. 618, 639 (1965) and the fundamental fairness of the resulting conviction. On the other hand, our decisions in *Linkletter* and *Tehan* v. *Shott,* 382 U. S. 406 (1966), demonstrate that practices found to violate the Due Process Clause of the Fourteenth Amendment need not necessarily be applied to final convictions. The factors adverted to in those cases for determining whether a constitutional decision should be applied to final cases were the State's reliance on the conduct newly found unconstitutional, whether the purpose of the new rule would be served by fully retroactive effect, and the effect of retroactivity on the administration of justice.

In my view, these factors justify limiting the application of the decision I propose to nonfinal convictions. Texas came to rely on the constitutionality of the procedure involved in these cases by this Court's consistent failure to review the practice until the grant of certiorari in these cases. Moreover, there can be no doubt but that application of this rule to final convictions would seriously disrupt the administration of crim-

inal law in Texas as well as the other States which have employed a similar procedure in recidivist cases. Cf. *Johnson* v. *New Jersey,* 384 U. S. 719 (1966). Thus, the question becomes whether the procedure which I would hold unconstitutional infected every proceeding of which it was a part with the clear danger of convicting the innocent. See *Tehan* v. *Shott, supra.* It seems to me that the prejudicial impact of the Texas procedure is not so great as to justify application to final cases.

In all the cases where the constitutional doctrine has been retroactively applied, the judgment was made that the procedure found erroneous went to the heart of the fairness of the conviction and raised the danger of convicting the innocent. Thus, in *Gideon* and *Douglas,* the Court concluded that failure of an indigent defendant to be represented by counsel at trial and on appeal negated the possibility of a fair adversary proceeding. Similarly, the rule of *Griffin* v. *Illinois* was retroactively applied because forcing an indigent to forgo a meaningful appeal because he could not pay for a transcript meant that the availability of a basic part of the State's system for determining guilt or innocence was conditioned on financial resources. This procedure was an obvious and fundamental denial of fairness in the process leading to conviction. In the final area where new rulings have been retroactively applied, *Jackson* v. *Denno,* the prejudice to the defendant was that he was not assured of a fair procedure in determining the voluntariness of his confession, and, moreover, that a jury might take into account a confession which it believed to be coerced in determining the defendant's guilt. Obviously, the prejudice which results from the jury's learning of a confession which is obtained unconstitutionally goes directly to the heart of the finding of guilt; and because one reason the Constitution has been held to outlaw involuntary confessions is their unreliability, *Brown* v. *Mississippi,* 297 U. S. 278 (1936) (for

other reasons see, *e. g., Rogers* v. *Richmond,* 365 U. S. 534 (1961); *Culombe* v. *Connecticut,* 367 U. S. 568 (1961)), the procedure held unconstitutional in *Jackson* involved a danger of convicting the innocent.

In contrast to the unconstitutional procedures involved in the cases discussed above, the admission of prior-convictions evidence in connection with a recidivist statute does not seem to me to justify reversal of final convictions. The fact that prior-convictions evidence has been traditionally admitted when related to guilt or innocence suggests that its prejudice has not been thought so great as to undermine "the very integrity of the fact-finding process" and to involve a "clear danger of convicting the innocent." See *Linkletter* v. *Walker,* 381 U. S., at 639; *Tehan* v. *Shott,* 382 U. S., at 416. Consequently, I would not apply a decision in line with this dissent to final convictions, such as No. 70, a habeas corpus proceeding.

The decision I propose is consistent with a large body of judicial thought. Two United States Courts of Appeals have adopted the view that recidivist procedures which authorize admission of prior-convictions evidence before the jury determines that the defendant is guilty violate due process. In *Lane* v. *Warden,* 320 F. 2d 179 (C. A. 4th Cir. 1963), the court reasoned that "it is patent that jurors would be likely to find a man guilty of a narcotics violation more readily if aware that he has had prior illegal association with narcotics. . . . Such a prejudice would clearly violate the standards of impartiality required for a fair trial." 320 F. 2d, at 185. In the same vein, the Third Circuit, in *United States* v. *Banmiller,* 310 F. 2d 720 (1962), reasoned that a procedure like the one involved in the three cases at bar would cause the jury to have in mind the defendant's previous convictions in determining his guilt of the crime currently charged. Both these courts, in fact, went farther than I would, in that they applied their decisions to final

convictions. In England, the prejudice which results from proof of prior crimes before a finding of guilt has been recognized for more than a century, and the rule has been that a finding as to prior crimes is made in a separate hearing after the finding of guilt.[10]

The majority of States have adopted procedures which cure the prejudice inherent in the procedure in the cases at bar. In all, some 31 States have recidivist procedures which postpone the introduction of prior convictions until after the jury has found the defendant guilty of the crime currently charged.[11] And at least three others

---

[10] Coinage Offences Act, 1861, 24 & 25 Vict., c. 99; Act of 6 & 7 Will. 4, c. 111; *Reg. v. Shuttleworth*, 3 Car. & K. 375.

[11] The States which have adopted a procedure either by legislation or judicial decision which separates the determination of prior convictions from the determination of guilt of the crime currently charged are: Alaska, Alaska Stat. § 12.55.060 (1962); Arkansas, *Miller v. State*, 239 Ark. 836, 394 S. W. 2d 601 (1965); Colorado, *Heinze v. People*, 127 Colo. 54, 253 P. 2d 596 (1953); Connecticut, *State v. Ferrone*, 96 Conn. 160, 113 A. 452 (1921); Delaware, Del. Code Ann. Tit. 11, § 3912 (b) (Supp. 1964); Florida, Fla. Stat. Ann. § 775.11 (1965), *Shargaa v. State*, 102 So. 2d 814 (1958); Idaho, *State v. Johnson*, 86 Idaho 51, 383 P. 2d 326 (1963); Illinois, Ill. Rev. Stat. c. 38, §§ 603.1–603.9 (1963), Ill. Rev. Stat. c. 38, § 22–43 (1965); Kansas, Kan. Gen. Stat. Ann. § 21–107a (1949); Louisiana, La. Rev. Stat. Ann. § 15:529.1 D (Supp. 1962); Maryland, Md. Rule of Proc. 713; Michigan, Mich. Stat. Ann. § 28.1085 (1954); Minnesota, Minn. Stat. Ann. § 609.16; Missouri, Mo. Rev. Stat. § 556.280 (1959); Nebraska, Neb. Rev. Stat. § 29–2221 (1964); New York, N. Y. Pen. Law § 1943; New Mexico, *Johnson v. Cox*, 72 N. M. 55, 380 P. 2d 199 (1963); North Dakota, N. D. Cent. Code § 12–06–23 (1960); Ohio, Ohio Rev. Code Ann. § 2961.13 (1954); Oklahoma, Okla. Stat. Ann. Tit. 22, § 860 (Supp. 1964), *Harris v. State*, 369 P. 2d 187 (1962); Oregon, Ore. Rev. Stat. § 168.065 (1961); Pennsylvania, Pa. Stat. Ann. Tit. 18, § 5108 (1963); South Dakota, S. D. Code § 13.0611 (3) (1939); Tennessee, Tenn. Code Ann. § 40–2801 (1955), *Harrison v. State*, — Tenn. —, 394 S. W. 2d 713 (1965); Texas, Texas Code Crim. Proc. Art.

have substantially mitigated the prejudice of the single-
stage recidivist procedure by affording the defendant the
right to stipulate to his prior crimes to prevent their
introduction at the trial.[12] Thus, only 16 States still
maintain the needlessly prejudicial procedure exemplified
in these three cases. The decision I propose would
require only a small number of States to make a relatively
minor adjustment in their criminal procedure to avoid
the manifest unfairness and prejudice which have already
been eliminated in England and in 34 of the United
States.

I would reverse the convictions in Nos. 68 and 69 and
remand for a new trial. In No. 70, I would affirm this
final conviction.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE
DOUGLAS joins, dissenting.

I join the opinion of THE CHIEF JUSTICE insofar as
that opinion would reverse in Nos. 68 and 69. I would,

36.01 (1966); Utah, Utah Code Ann. § 76-1-19 (1953), *State* v.
*Stewart,* 110 Utah 203, 171 P. 2d 383 (1946); Virginia, Va. Code
Ann. § 53-296 (1958); Washington, *State* v. *Kirkpatrick,* 181 Wash.
313, 43 P. 2d 44 (1935); West Virginia, W. Va. Code Ann. § 6131
(1961). In addition to these 29 States, two States take prior
convictions into account in the determination of when a convict is
eligible for parole, and entrust the fact-finding determination to
parole boards: Mississippi, Miss. Code Ann. § 4004-03 (Supp. 1964),
as amended, Miss. Laws 1964, c. 366; New Jersey, N. J. Stat. Ann.
§ 30:4-123.12 (1964), N. J. Rev. Stat. § 2A:85-13 (Supp. 1966).
Thus, 31 States in all have adopted wholly nonprejudicial procedures
in connection with their recidivist statutes.

[12] The three States which have adopted a stipulation procedure are:
Arizona, Ariz. Rule Crim. Proc. 180, Ariz. Code Ann. § 44-1004
(1939), *Montgomery* v. *Eyman,* 96 Ariz. 55, 391 P. 2d 915 (1964);
California, Cal. Penal Code § 1025, *People* v. *Hobbs,* 37 Cal. App. 2d
8, 98 P. 2d 775 (1940); and Wisconsin, *State* v. *Meyer,* 258 Wis. 326,
46 N. W. 2d 341 (1951).

however, also reverse in No. 70. It seems to me that the constitutional error here involved undermined "the very integrity of the fact-finding process," *Linkletter* v. *Walker,* 381 U. S. 618, 639, and I would therefore apply the rule retroactively. *Gideon* v. *Wainwright,* 372 U. S. 335; *Douglas* v. *California,* 372 U. S. 353; *Griffin* v. *Illinois,* 351 U. S. 12; *Jackson* v. *Denno,* 378 U. S. 368.