70 F.3d 115
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Joe Willie BYRD, Petitioner-Appellant,
v.
George WILSON, Warden, Blackburn Correctional Complex;
Attorney General, Commonwealth of Kentucky
Respondents-Appellees.
 No. 94-5586.
 United States Court of Appeals, Sixth Circuit.
 Nov. 3, 1995.
 
 Before: NELSON and BOGGS, Circuit Judges; and GILMORE, District Judge.*
 PER CURIAM.
 
 
 1
 Joe Willie Byrd, a prisoner at the Blackburn Correctional Complex in Lexington, Kentucky, petitioned pro se for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254, which the district court denied. Byrd claims that the state court's refusal to allow him to ask certain questions at voir dire denied him a fair trial, and that the court's failure to bifurcate his trial denied him due process of law. Finding both contentions to be without merit, we affirm the decision of the district court.
 
 
 2
 * Byrd was indicted in state court for possession of marijuana, defacing a firearm, possession of prescription drugs in an improper container, trafficking in cocaine, and possession of drug paraphernalia. Byrd was convicted of the last two offenses, and he pled guilty to the charge of being a second-degree persistent felony offender based on a previous conviction for trafficking in marijuana. He was sentenced to a total of twenty years in prison (based on sentences of twenty years for trafficking in cocaine, six months for possessing drug paraphernalia, and an enhanced sentence of twenty years for being a second-degree persistent felony offender).
 
 
 3
 Before trial, Byrd moved to bifurcate the proceedings so as to prevent the jury from hearing evidence of his earlier conviction for trafficking in marijuana as it considered his guilt on the pending drug charges. The court agreed with Byrd's reasoning, but believing itself to be constrained by existing state law, denied the motion. Failing to prevail on that motion, Byrd moved the court to permit him to question prospective jurors at voir dire about bias concerning his prior drug conviction, which the court also denied. Byrd's claims of error arise from these two rulings of the state trial court.
 
 II
 
 4
 Although "a trial judge's finding that a particular venireman was not biased ... [is] a finding of fact," Wainwright v. Witt, 469 U.S. 412, 428 (1985), the broader question of whether a trial court's supervision of voir dire was adequate to prevent a violation of due process is a legal determination subject to de novo review. United States v. Magana-Arevalo, 639 F.2d 226, 228-29 (5th Cir.1981).
 
 
 5
 The trial court did not err by refusing to allow Byrd to ask prospective jurors at voir dire whether they could disregard evidence of his prior conviction in determining his guilt on the pending charges. The fact that jurors are aware of a defendant's prior conviction is not a sufficient reason for habeas corpus relief, particularly where the judge has given a cautionary statement or has taken other steps to ensure juror impartiality.
 
 
 6
 In this case, the trial court was especially vigilant. First, the judge questioned the jurors during voir dire concerning bias:
 
 
 7
 [Y]ou're not to consider the arrest, the arraignment or the indictment of this defendant as any evidence of guilt. The only evidence that you are to consider will be the evidence which you will hear introduced during the course of this trial. Will each of you set aside anything you may have read or may have heard concerning drugs in this community and render a fair and impartial verdict of this particular defendant based upon the evidence that you will hear introduced during the course of this trial? Is there anyone who could not do so?
 
 
 8
 Trial Transcript at 19. None of the prospective jurors came forward.
 
 
 9
 Byrd's counsel could not reasonably have asked the prospective jurors any more concerning their ability to follow the law. In essence, the trial court performed the same inquiry that Byrd claims that he was denied. Moreover, when the evidence of Byrd's prior conviction was raised at trial, the trial court specifically cautioned the jury not to be influenced by Byrd's prior conviction:
 
 
 10
 Ladies and gentlemen, the fact that this defendant has been previously convicted of a felony is not to be considered by you as any evidence of his guilt in this particular case but only insofar as it may have a bearing, if it does so, upon his truthfulness as a witness and the weight to be given to his testimony.
 
 
 11
 Trial Transcript at 102. Accordingly, we hold that the trial court more than fulfilled its duty to ensure that Byrd received a fair trial.
 
 III
 
 12
 Byrd also argues that the trial court's failure to bifurcate his trial into a guilt phase and a penalty phase denied him due process of law by allowing the jury improperly to consider the circumstances of his prior conviction for drug trafficking. The trial court relied upon Smith v. Commonwealth, 707 S.W.2d 342 (Ky.1986), in denying Byrd's motion to bifurcate the trial. Byrd subsequently appealed the trial court's ruling to the Kentucky Supreme Court.
 
 
 13
 While that appeal was pending, the Kentucky Supreme Court decided Clay v. Commonwealth, 818 S.W.2d 264 (Ky.1991), which specifically overruled Smith and required bifurcation in all drug cases where the state seeks to sentence a defendant as a persistent offender. Clay further held that "[i]n all drug cases tried after the effective date of this opinion, when a subsequent offense is charged, the trial shall be bifurcated in accordance with the Truth-In-Sentencing Act (K.R.S. Chapter 532)." Since Byrd had been tried well before the Clay decision, the Kentucky Supreme Court denied Byrd's appeal and affirmed his conviction.
 
 
 14
 Byrd now contends that the court's refusal to apply Clay retroactively violates his constitutional rights, and he asks us to reverse his conviction. Byrd attempts to navigate the shoals of federal habeas corpus law by arguing that the Clay decision represented a "new rule" of criminal procedure, as that term is defined in Teague v. Lane, 489 U.S. 288 (1989), and Griffith v. Kentucky, 479 U.S. 314 (1987), which warrants Clay's retroactive application.
 
 
 15
 Nonetheless, we need not go into the byzantine rules that govern whether a subsequent decision should be applied retroactively, because Clay is an interpretation of state law, not federal constitutional law. We have long held that habeas corpus exists to correct only constitutional errors:[1]
 
 
 16
 "[O]rdinarily habeas corpus ... is not considered to be a proper remedy for correcting errors in trial procedure.... It is only where trial error or irregularities infringe upon specific constitutional protection or are so prejudicial as to amount to a denial of due process that a justiciable federal issue is presented in a habeas corpus proceeding."
 
 
 17
 Manning v. Rose, 507 F.2d 889, 892-93 (6th Cir.1974), quoting Atwell v. Arkansas, 426 F.2d 912, 915 (8th Cir.1972).
 
 
 18
 The Supreme Court held in Spencer v. Texas that bifurcated trials are not constitutionally mandated where a defendant is subject to sentencing as a habitual offender:
 
 
 19
 To say that the two-stage jury trial ... is probably the fairest, as some commentators and courts have suggested, and with which we might well agree were the matter before us in a legislative or rule-making context, is a far cry from a constitutional determination that this method of handling the problem is compelled by the Fourteenth Amendment.... It would be a wholly unjustifiable encroachment by this Court upon the constitutional power of States to promulgate their own rules of evidence to try their own state-created crimes in their own state courts, so long as their rules are not prohibited by any provision of the United States Constitution, which these rules are not.
 
 
 20
 385 U.S. 554, 567-69 (1967) (footnotes omitted).
 
 
 21
 We cannot imagine a more clear statement of controlling law. Even assuming that there was an error in Byrd's case, it is not an issue of constitutional magnitude and may not be corrected upon habeas corpus review. Byrd has already received the benefit of Kentucky's system of state appellate review, all the way to its Supreme Court. We lack the authority to second-guess that court's interpretations of state law.
 
 IV
 
 22
 For the foregoing reasons, the decision of the district court denying habeas corpus relief is AFFIRMED.
 
 
 
 *
 The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The legislative, rather than constitutional, nature of the issue was indicated by the language in Smith stating: "[t]he question of whether bifurcated jury trials are required ... is a matter of public policy which addresses itself to the General Assembly of Kentucky." 707 S.W.2d at 343