UNITED STATES of America ex rel. John WASHINGTON, Appellant,

v.

Howard D. YEAGER, Principal Keeper of the New Jersey State Prison at Trenton, New Jersey.

No. 18163.

United States Court of Appeals, Third Circuit.

Argued Nov. 4, 1970.

Decided March 31, 1971.

Certiorari Denied Nov. 22, 1971.
See 92 S.Ct. 345.

Philip D. Saxer, Gravel & Shea, Burlington, Vt., for appellant.

Edward N. Fitzpatrick, Asst. Prosecutor, Bergen County, Hackensack, N. J. (Robert Dilts, Bergen County Prosecutor, Hackensack, N. J., on the brief), for appellee.

Before BIGGS, VAN DUSEN, and ROSENN, Circuit Judges.

OPINION OF THE COURT

BIGGS, Circuit Judge.

This is an appeal from the denial by the United States District Court of

---

Washington's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Washington was indicted, along with others, for conspiring to commit armed robbery in violation of N.J.S.A. 2A:98–1 and 2A:-98–2, and for murder in violation of N.J.S.A. 2A:113–1 and 2A:113–2. He was convicted of murder in the first degree and sentenced to death pursuant to N.J.S.A. 2A:113–4. He was also convicted on the conspiracy charge but sentence on that charge was suspended. On appeal, the New Jersey Supreme Court affirmed the convictions but found error in the imposition of the death sentence. State v. Laws, 50 N.J. 159, 233 A.2d 633 (1967). On reargument, the New Jersey Supreme Court modified the sentence to life imprisonment. State v. Laws, 51 N.J. 494, 242 A.2d 333 (1968). The United States Supreme Court denied certiorari, 393 U.S. 971, 89 S.Ct. 408, 21 L.Ed.2d 384 (1968).

The facts are set forth in the opinion in the companion case, United States ex rel. Laws v. Yeager, 448 F.2d 74 (1971), filed concurrently with this opinion, and need not be repeated here.

In his petition for a writ of habeas corpus, Washington lists six grounds on which he claims he is being unlawfully incarcerated. Grounds one, two, three, and five are factually identical and present the same legal issues, considered in our opinion in Laws. Therefore, in this opinion, we need consider only the issues surrounding the legality of the search and seizure and the propriety of the trial judge's and prosecutor's conduct.

## I. Search and Seizure

During the hearing on the motion to to suppress evidence, the following facts were adduced:

"After the search of the Laws' apartment had proved * * * productive, an application was made to Judge Murtagh on May 1, 1965 for a warrant authorizing the search of Apartment #7N, 15 West 139th Street, New York City where the defendant Washington lived with his parents. At this time Judge Murtagh had before him, not only the earlier affidavits of Spahr and Dennis, but also affidavits by Detective Patrick McKee of the New York Police Department and Detective Allmers of the Bergen County Prosecutor's office. Detective Allmers' affidavit set forth that Dennis had identified John Washington from a police photograph as one of the conspirators in the Laws' apartment on April 18th. It referred to the fact that currency, identified as part of the proceeds of the robbery, had been recovered from Laws' apartment, that Laws had been arrested, and that, according to information received from Dennis, additional proceeds would be found in Washington's apartment. * * * Judge Murtagh [also] spoke by telephone with Dennis, who was then in the Bergen County Jail. Under oath, Dennis told him that he had identified Washington from a police photograph as one of the conspirators and that part of the proceeds of the robbery would be found in the Washington apartment. Judge Murtagh also spoke by telephone with Assistant Prosecutor Galda who stated [also] under oath, that he had shown several photographs to Dennis and that Dennis had identified Washington as one of the conspirators." 50 N.J. at 174, 233 A.2d at 640–641.

First, Washington asserts that the search warrant was defective in that Judge Murtagh improperly determined that there was probable cause. He objects specifically to the administration of telephone oaths to both Dennis and Galda. The Supreme Court of New Jersey found it unnecessary to decide this issue, stating, "Although the defendants address a challenge to the propriety of Judge Murtagh's action in taking sworn statements over the telephone (cf. 39 Am.Jur. Oath and Affirmation § 14 (1942)), we need not concern ourselves with it for, as we

have stated, there clearly was probable cause for the issuance of the warrant without regard to the support furnished by the confirmatory telephone information." 50 N.J. at 174–175, 233 A.2d at 641. It does not of course follow that Judge Murtagh would have issued the warrant if it had not been for his conversations on the telephone with Dennis Kingsley and with Prosecutor Galda but there is no showing to that effect and we must rest upon the present record. But if indeed the administering of the oaths by telephone was erroneous, we cannot deem such error to rise to constitutional proportions under the circumstances at bar.

■ Second, Washington alleges, as did Laws, that the reliability of the informant, Dennis Kingsley, was never properly established. We conclude that Kingsley's reliability was properly established for, at the time Judge Murtagh issued the warrant, information provided by Kingsley had led to a successful search of Laws' apartment, the arrest of Laws, and the arrest of another co-defendant, Austin Baker.

Finally, Washington raises a number of other issues concerning the legality of the search and his arrest. These issues insofar as they merit discussion are disposed of by our opinion in *Laws, supra,* as amended.

## II. Conduct of the Trial Judge and Prosecutor

■ Most of the allegations of constitutional error with respect to the conduct of the trial judge and prosecutor are identical with the issues raised by *Laws,* and, as we conclude in *Laws,* we find no error of constitutional dimension. Washington, however, does raise a question with respect to the propriety of the prosecutor's and trial judge's references to his prior criminal record.

At page 4198 of the trial transcript, the prosecutor, Mr. Galda, stated in summation:

"You are going to have a record of Laws' in front of you, a record which will show a maximum of twenty-seven years already meted out, and they talk about life and liberty. Twenty-seven years was handed out by judges already in Mr. Laws' case—a pro to be sure, and *Washington, another pro, fourteen years."* (Emphasis added.)

Washington's counsel did not object to this reference.

During the trial judge's charge to the jury, he summarized Detective Patrick Fusci's testimony on *direct* examination:

"On cross-examination [*sic*] [1] by Mr. Washington's attorney, he [Fusci] testified that Washington was convicted of robbery in 1954 and was sentenced from 2 to 7 years in the State Prison. In 1960 he was convicted of attempted robbery and sentenced from 3½ to 7 years." Transcript at 4292.

During Washington's objections to the points for charge, his counsel stated:

"I though it was awfully unfair and very, very prejudicial when you brought out what you call my cross-examination of the New York detective, or whatever he was, whether his rank was as to Mr. Washington's criminal record.

"As we know, the only reason that that was ever brought out was the indication or my thought at the time that I would ask Mr. Washington to testify and, therefore, I didn't want the state to be in a position where they could bring it forward as though I had been hiding it, but once he had not testified it is inconceivable that there was any justification at all to

---

1. The statement of the trial judge is incorrect. The testimony given by Detective Fusci as to Washington's crimes was given not on cross-examination but on direct examination, though what had

been testified to by Detective Fusci on direct examination was somewhat expanded on cross-examination by the prosecution. See Tr. at 3084, et seq.

bring this out to the jury at the last moment, the last few moments, and as a result sir, I just don't see—as I say, I just used what I have taken out here, just used those as examples of the entire charge with respect to the review of the facts, the eyewitnesses of the Public Service."

Washington's attorney argues that since Washington did not take the stand at any time during the trial, it was improper for the prosecutor to mention the defendant's prior criminal record. In appellant's *pro se* brief, it is also argued that Judge Galanti's comments about the facts concerning Washington's record elicited during Fusci's direct-examination by Washington's own attorney was improper.

In a dissenting opinion in Spencer v. Texas, 385 U.S. 554, 572–574, 87 S.Ct. 648, 658–659, 17 L.Ed.2d 606, Chief Justice Warren stated:

"[I]t is well established that evidence of prior convictions may not be used by the State to show that the accused has a criminal disposition and that the probability that he committed the crime currently charged is increased. While this court has never held that the use of prior convictions to show nothing more than a disposition to commit crime would violate the Due Process Clause of the Fourteenth Amendment, our decisions exercising supervisory power over criminal trials in federal courts, as well as decisions by courts of appeals and of state courts, suggest that evidence of prior crimes introduced for no purpose other than to show criminal disposition would violate the Due Process Clause." (Footnotes omitted.)

We find it unnecessary to decide whether to employ such a rule of constitutional law for the circumstances of the instant case present a far less compelling situation than where the defendant himself does not introduce such evidence of prior crimes. In the case at bar, there were several times during the course of the trial when Washington's attorney, Mr. Monaghan, alluded to Washington's criminal record. During the voir dire, Mr. Monaghan mentioned Washington's record to each of the veniremen called for examination, most, if not all of whom, served on the jury. Mr. Monaghan informed each of them that his client had been convicted in New York on two separate occasions. He endeavored to do this by posing a hypothetical question designed to test the juror's ability to utilize the defendant's prior criminal record as impeachment evidence only and not use it as evidence of a predisposition to commit the crime for which Washington was charged. During his opening statement, Mr. Monaghan stated:

"Now, let's just assume for a second —assume for a second that my client, Mr. Washington, was there [at the scene of the robbery]. You all know that my client has been convicted and served time."

\* \* \* \* \* \*

"If you had been on this job [the robbery for which Washington was being tried] with someone and they were picked up, what would you do, hang around? This fellow had been in prison twice. Thank you for your kind attention." [2]

During direct examination of Detective Fusci, Mr. Monaghan also brought out his client's prior criminal record:

"Q. And looking at your sheet if you need to, Detective, Mr. Washington was convicted on April 29th, 1954, of robbery, second degree. Is that correct?

"Mr. Galda: Now, is he asking him or is he telling him, if your Honor please?

"Mr. Monaghan: I am asking him.

"The Court: Answer the question, would you.

"A. Yes, sir.

"The Court: I beg your pardon? What was that date, April 29, 1954?

2. See Tr. respectively at 110 and 129.

"Mr. Monaghan: Yes.

"The Court: All right.

"By Mr. Monaghan:

"Q. And on November 14th of '60 was he convicted of attempted robbery, third degree, sir?

"A. Yes, sir.

"Mr. Monaghan: That's all I have.

\*   \*   \*   \*   \*   \*

"The Court: Any cross-examination, Mr. Galda?

"Cross-examination by Mr. Galda:

"Q. What was the sentence on the records of convictions?

"A. The sentence for 4-29-54 was 2 to 7 years State Prison; and on 11-14-60 it was 3½ to 7 years State Prison."

During the direct examination of Marjorie Stevens, Washington's girl friend, who testified to prove Washington's alibi, the following testimony was elicited by Mr. Monaghan:

"Q. And do you have some approximate idea how long you were asleep before he left?

"A. It was quite some time. I thought it was in the morning, you know—I think about—well, in fact, anyway, when I went to sleep it was about 1:00, something like that. It wasn't long when he thought he should go home. He did that often, anyway, sometimes—mostly Monday, something like that, because he said the man, the probation—

"Q. Probation officer?

"A. He wanted to be home when the man came.

In his summation to the jury, Mr. Monaghan stated:

"[W]ell, I can tell you from the testimony in this case that John Washington wasn't working on it a couple of months before it happened, several months, because John Washington was in jail, wasn't he? So he wasn't referring to him.

And several months before John Washington got out of jail Joe Kingsley couldn't have figured that I will use John Washington. That's for sure." [3]

It is obvious from a review of these quoted portions of the transcript put on the record by his attorney that Washington's prior criminal record was common knowledge to all of the jurors.[4] While we note and do not approve of the prosecutor's reference in his summation and that of the trial judge's comments in his charge, seemingly as substantive proof of Washington's predisposition to commit the crime with which he was charged, we cannot deem it to be so prejudicial as to constitute a denial of due process.

The order of the District Court will be affirmed.

The court desires to thank court-appointed counsel for his able representation of Washington.

---

3. See for the respective foregoing quotations Tr. 3083-85, 3752-53 and 4038.

4. We presume that Washington's attorney, Mr. Monaghan, as a trial tactic was trying to anticipate the probable intent of the prosecution to advert to Washington's prior criminal record and by exposing it himself to some degree mitigate its effect.