Irvin B. GOODSPEED

v.

W. J. ESTELLE, Director, Texas Department of Corrections.

No. CA 4–75–86.

United States District Court,
N. D. Texas,
Fort Worth Division.

Sept. 26, 1977.

Irvin B. Goodspeed, pro se.

Anita Ashton, Asst. Atty. Gen., Austin, Tex., for W. J. Estelle, Director, Texas Dept. of Corrections.

OPINION

BREWSTER, District Judge.

The petitioner, Irvin Goodspeed, brought this habeas corpus action seeking to set

aside and vacate his judgment of conviction in Cause No. 65894, *State of Texas v. Irvin Goodspeed,* in the Criminal District Court of Tarrant County, Texas, No. 2, dated March 2, 1962, and his sentence in such case dated March 28, 1962. Goodspeed was tried under an indictment charging him with the offense of robbery with a fire-arm, which alleged for the purpose of enhancement of punishment that, prior to the commission of the robbery, he had been convicted on April 28, 1947 of the offense of murder in Cause No. 998, *State of Texas v. Irvin Goodspeed,* in the District Court of Archer County, Texas. The robbery trial was before a jury, which returned the following verdict:

"We, the Jury, find the Defendant guilty of the offense of robbery with Firearms as charged in the First Count of the Indictment; and further of having been previously convicted of Murder, an offense to which the death penalty is affixed as an alternate punishment. The Jury recommends Life in Prison."

Upon the verdict,[1] Goodspeed was sentenced to confinement in the state penitentiary for life.

Goodspeed gave notice of appeal, but the appeal was later dismissed at his request.

The only ground urged by Goodspeed in support of his petition now legitimately before the Court is that the Texas habitual criminal statute relied upon to enhance punishment in his robbery trial was unconstitutional on its face and in its application. However, it is deemed expedient to discuss the background of this case for two reasons:

1. Goodspeed appealed a former judgment of this Court denying an application for writ of habeas corpus. The Court of Appeals agreed with this Court's holding on all of the grounds, except Goodspeed's claim

1. At the time Goodspeed was tried on the armed robbery case, Texas law did not provide for a bifurcated trial on the issues of guilt and penalty. The one-phase trial with a single verdict on both issues was held to be valid in cases involving Texas habitual criminal statutes.

*Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). Under the Texas Revised Code of Criminal Procedure (Art. 37.07), all jury trials under pleas of not guilty have been bifurcated since January 1, 1966, the effective date of the Code.

that he was forced to trial in a prison uniform. The case was remanded to get this Court's views on the questions of the retroactivity of the doctrine declared in *Hernandez v. Beto,* 5 Cir., 443 F.2d 634 (1971), cert. den. 404 U.S. 897, 92 S.Ct. 201, 30 L.Ed.2d 174, and of whether Goodspeed suffered any harm if he was tried in prison clothes. The background facts will show why the issues about prison clothes are no longer involved.

2. Goodspeed may be in the penitentiary for some time yet. He could expect to have considerable difficulty in getting a parole in view of his many felony convictions, some of which involved serious violence to his victims, and in view of the fact that the armed robbery that was the basis for the conviction he is here attacking was committed while he was on parole on his 60 year sentence in his murder case. He appears to have found a new play toy in habeas cor-

pus,[2] and to be obsessed with loophole law. He also repeats grounds in his post-conviction actions, even though they have been previously litigated. It is reasonable to except further writs from him. It will therefore be worthwhile to summarize in one opinion all of Goodspeed's claims to date, so as to make it easier to avoid repeated consideration of the same grounds.

Goodspeed's present habeas corpus application states that he has previously prosecuted one other such action and that it was denied. That denial was upheld on appeal. *Goodspeed v. Beto,* 5 Cir., 460 F.2d 398 (1972). The application before the Court of Appeals in the last case has undergone some substantial changes since the remand. The following are the grounds urged by Goodspeed in one or more of those proceedings:

1. Illegal extradition from Brazil. 341 F.2d 908.

---

2. The transcript of the habeas corpus proceedings in the state court shows:

(a) Petitioner spends considerable time in the "writ room" at the penitentiary.

"Q You have acquired a great deal of expertise since then, Mr. Goodspeed, have you not, sir?

"A I have spent all my time—"

(Colloquy of counsel omitted).

"A (By the witness) I spend all my time in what they call the writ room down there, reading everything I can find." (Tr. 123).

NOTE: The question was addressed to Goodspeed and referred to the 15 year period prior to the habeas hearing, and to expertise in law.

The 120 cases cited by Goodspeed in his *pro se* brief filed herein on the one question now before the Court are some indication of the productivity of the time that Goodspeed spent in the writ room.

*   *   *   *   *   *

(b) Goodspeed tried to dominate the defense of his robbery trial and the prosecution of his habeas corpus proceeding.

"Q But you did try and dominate your trial, did you not?

"A Yes, I did." (Tr. 124).

NOTE: This question also addressed to Goodspeed had reference to the robbery trial. His court-appointed counsel in that trial was Joe Shannon, an able and experienced lawyer in criminal cases. Mr. Shannon testified:

"Q When you say he wanted to run the whole proceeding, I take it there was some difference of opinion between yourself and Mr. Goodspeed about how the case should be run?

"A There was, yes, sir.

"Q As a matter of fact, Mr. Goodspeed wanted to pretty well take over the complete defense himself, did he not?

"A Yes." (Tr. 80).

*   *   *   *   *   *

"Q Did you ask your attorney to make some effort to get you some different clothing?

"A Me and my attorney wasn't getting along too good. I represented myself." (Tr. 95–96).

During the course of the last habeas corpus proceeding in the state court, Goodspeed wrote the court clerk:

"Pleas (sic) call Charles D. Yarborough 5148 West Belknap and explain I have filed *my* brief and *it must not be changed.* Its just like I intend to prosecute all way to the Supreme Court." (R. 13. Emphasis supplied).

"I'm aware if I get *my* ideas ruled on I'm going to have to file *my own brief* and that is what I'm doing." (R. 13. Emphasis supplied).

NOTE: Charles D. Yarborough was appointed to represent Goodspeed at Goodspeed's written request.

*   *   *   *   *   *

The record of the state habeas proceeding is before this Court in two volumes. The one containing the instruments filed with the Clerk is referred to as "(R_____)". The one covering the evidentiary phase is referred to as "(Tr._____)".

2. Lack of counsel. 341 F.2d 908.

3. Ineffective assistance of counsel. 460 F.2d 398.

4. Judge who presided in murder trial was disqualified. 341 F.2d 908. This ground was repeated in a subsequent proceeding. 460 F.2d 398.

5. The part of the indictment alleging the previous conviction for murder was void. 341 F.2d 908. This ground was reinstated in the application filed in the state court after remand of the second case, and, in more detailed form, is the only ground now before the Court.

6. Denial of a sufficient hearing. 341 F.2d 908.

7. Insufficiency of the evidence to support the conviction for murder. 460 F.2d 398.

8. Prejudicial publicity. 460 F.2d 398. Even though the Court of Appeals upheld the denial of this ground, Goodspeed urged it again in the state court proceeding following remand, and offered considerable evidence in regard to it. A brief summary of the portions of the newspaper publicity Goodspeed claimed prevented him from getting a fair trial will be given to foreclose his litigating some phase of this question again. The newspaper clippings Goodspeed offered in evidence revealed that: (1) He had been convicted of a number of felonies. (2) While awaiting trial on some of them, he, along with two notorious alumni of Alcatraz, broke out of jail in the small county seat, Montague, and stabbed the jailer on the way. (3) The jailer, though left for dead, recovered, and Goodspeed was later convicted of assault to murder him. (4) Goodspeed's murder conviction arose from a transaction wherein he got a ride with a truck driver, and then robbed and killed him, and threw his body in a roadside ditch. (5) Goodspeed fled and worked as a merchant seaman for several months until he was apprehended in a seaport in Brazil. (6) He was extradited and then tried and convicted of murder with malice, and sentenced to 60 years. (7) While on parole on his murder sentence, he robbed a manager of a 7–11 Store in Arlington, Texas at the point of a gun around closing time, and was apprehended very shortly thereafter as a result of a police radio broadcast by patrolmen from Arlington and two neighboring cities after a 100 mile per hour chase. At the time of his arrest he had in his possession money orders taken in the robbery and a substantial amount of money. (8) He stated to news reporters that he was going to conduct his own defense in the robbery trial.

9. Suggestive lineup. 460 F.2d 398.

10. Denial of his right to appeal from both the murder and the robbery convictions. 460 F.2d 398.

11. He was forced to wear prison clothes during his robbery trial. 460 F.2d 398.

The habeas corpus proceeding got back to the state court at the request of the defendant. Shortly after the mandate was received following the judgment remanding the case to this Court, Goodspeed was brought to Court and Mr. Charles D. Yarborough[3] was appointed to represent him. After they had conferred, the Court consulted with them about a convenient trial date. They reported that Goodspeed wanted to urge some additional grounds which had not theretofore been litigated in the state court, and requested that this proceeding be dismissed without prejudice to allow Goodspeed to go back to the state court for further proceedings. The request was granted.

Goodspeed stated that he was highly satisfied with Mr. Yarborough as his attorney, and wanted his services in the state court proceeding he was going to file. He later made a written motion in the state court

---

**3.** Mr. Yarborough was an able, aggressive lawyer, who had no trouble understanding the honest feelings of an underdog.

asking that Mr. Yarborough be appointed to represent him, and the Court granted the request.

In his habeas corpus petition in the state court,[4] Goodspeed urged the following grounds:

1. He was denied the right of effective assistance of counsel and the right of appeal in the trial of his murder case described in the enhancement allegations in his robbery indictment.

2. Pre-trial and trial publicity made it impossible for him to get a fair trial in his robbery case.

3. The Texas habitual criminal statute which was employed against him in this case was unconstitutional on its face and in its application.

4. His constitutional rights were violated because he was forced to wear jail clothes during the robbery trial.

It will be noticed from the long list of grounds urged by Goodspeed in post-conviction proceedings that the first two claims asserted by him had been previously adjudicated.

The state court held a thorough evidentiary hearing. Thirteen witnesses, including Goodspeed, testified, and seven exhibits were received in evidence. The transcript of the evidentiary proceedings covers 221 pages, and the one which includes the instruments filed with the clerk, 60 pages. The state court judge filed detailed findings of fact and conclusions of law on each of the issues raised by Goodspeed, although some of them had, probably not to the judge's knowledge, been previously decided against him. The petition was denied. The state court's reasons for ruling against Goodspeed on the issues of publicity and prison clothes will be briefly noticed.

The publicity issue was rejected on the ground, among others, that there was very little publicity about the case prior to the trial, and that that which occurred during the trial could not have had an adverse effect on the outcome because the jurors were sequestered and received no news media information relating to the case during the entire trial.

The reason for Goodspeed's raising the prison garb issue in the state court action is not clear, but his doing so cleared the air by exposing the fraud in his claim. Counsel for the state and for Goodspeed testified that he wore coveralls during his robbery trial, and that there was nothing on the coveralls to identify them with a jail or prison. Some recollected that they were white while others remembered them as being gray. One of the witnesses said that from their appearance they could have been his own work clothes.[5] The testimony of one of the jurors who served in the robbery trial showed that the jury did not have the impression that Goodspeed was being tried in jail or prison garb. When Goodspeed testified, he produced a two-piece white uniform from the Texas state penitentiary and said it was the very same garb that he wore during the robbery trial. He claimed that anyone would know from the word, "Wynne" on the back of it, that it was identified with the Wynne Prison Farm of the Texas Department of Corrections. He said that he had wrapped the uniform in plastic and carefully preserved it in his possession in prison for the more than ten years since his robbery trial. A warden from the Texas Department of Corrections testified that he knew from certain identifying marks and the nature of the fabric in the uniform that it was one which did not come into use in the prison system until at least two years after the robbery trial. Other witnesses testified that it would have been impossible for Goodspeed to have kept the uniform in his possession, as he claimed, because of rules relating to clothes for pris-

4. Goodspeed filed in the state court his petition for writ of habeas corpus, his first amended petition for writ of habeas corpus, and his supplemental writ of habeas corpus.

5. It is common knowledge that many workmen in this area, such as painters, paperhangers, mechanics and others, wear white or grey coveralls. Goodspeed claimed he was working as a carpenter helper at the time of his arrest.

oners. They said that a prisoner was allowed to have in his possession only one uniform at a time; and that when he needed a clean one, he had to go the the prison laundry and make the change there, so there would be no chance of his having two uniforms at a time. A guard at the prison stated that he "shook down" Goodspeed when he left there to go to Fort Worth for the state habeas hearing, and that Goodspeed had no extra uniform then. The jailer who checked Goodspeed in when he arrived at the jail in Fort Worth said that Goodspeed had no extra uniform, as he claimed he did.

In the face of that testimony, Goodspeed tried to withdraw the evidence on the issue, but the Court would not permit him to do it. The reason was not given, but the action taken permitted the Court to adjudicate the issue on its merits.

When Goodspeed's state habeas action had run its course, he returned to this Court with a habeas corpus petition challenging the validity of his robbery conviction and sentence upon the following grounds:

"statutes unconstitutional

"ineffective counsel

"tried in prison garb

"excess publicity [6]."

---

**6.** The grounds were amplified in briefs prepared and filed by Goodspeed. The statutes claimed to be unconstitutional were the Texas recidivist statutes (Arts. 62, 63 and 64, Texas Penal Code) in force at the time of his robbery trial. The Court is of the opinion that Art. 64 is the only one material here; but since Goodspeed sometimes refers to them collectively, all of them will be quoted. Art. 64 will be set out in the main body of the opinion, and Arts. 62 and 63, in this footnote.

Art. 62, titled, "Subsequent conviction for felony", provides:

"If it be shown on the trial of a felony less than capital that the defendant has been before convicted of the same offense, or one of the same nature, the punishment on such second or other subsequent conviction shall be the highest which is affixed to the commission of such offenses in ordinary cases."

Art. 63, titled, "Third conviction for felony", provides:

"Whoever shall have been three times convicted of a felony less than capital shall on such third conviction be imprisoned for life in the penitentiary."

[■] Goodspeed thereafter, on July 9, 1977, filed his amended application for writ of habeas corpus abandoning all claims involving fact issues and urging only his contentions that the Texas recidivist statute relied upon by the state in his robbery trial was unconstitutional. Two days before the filing of the amended petition, the Court had ordered that Goodspeed be produced before it for a hearing on his petition. The Court also instructed the Clerk to notify Mr. Charles D. Yarborough that he would be appointed to represent Goodspeed. Mr. Yarborough called the Court and said that he wanted to be excused because Goodspeed had lied to him so much during the trial, and had used him to perpetrate a fraud on the court in the state habeas proceeding in connection with the prison garb claim. Goodspeed was brought to Court, and the statements of Yarborough were related to him. He said he did not want Yarborough, anyway. It was at that time that he called the Court's attention to the fact that he had abandoned all claims [7] except the one involving the constitutionality of the recidivist statute, and that he had briefed that question the way he wanted it.

Goodspeed's contentions in regard to his claim that the Texas recidivist statute re-

---

**7.** Goodspeed was not giving up anything. The ineffective counsel issue had twice been finally decided against him (see 341 F.2d 908 and 460 F.2d 398), and the prejudicial publicity issue had been finally decided against him once (460 F.2d 398). The exposure of Goodspeed's fraud in his prison garb claim is sufficient ground for denying it. Even in the absence of such fraud, Goodspeed would have no valid claim on the prison garb issue because the transcript of the evidence in the state habeas proceeding, which is a part of the record in this case, shows (1) the clothing Goodspeed wore during the robbery trial was not identifiable as jail or prison garb, and (2) no objection was made to the Court to being tried in the clothes he wore. The following is quoted from *Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976):

"Accordingly, although the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in *identifiable* prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of

lied upon by the State was unconstitutional are taken from his briefs. They are, as might be expected, rather rambling and indefinite. Giving him the benefit of all doubt, the only grounds urged in his brief which could be labeled constitutional are his claims that the punishment he received in his trial under such statute was cruel and unusual; that the recidivist statute resulted in his twice being placed in jeopardy for the same offense; and deprivation of liberty without due process of law.

Art. 64, titled, "Second conviction for capital offense.", in effect at the time of Goodspeed's robbery trial in 1962, provided:

"A person convicted a second time of any offense to which the penalty of death is affixed as an alternate punishment shall not receive on such second conviction a less punishment than imprisonment for life in the penitentiary."

■ No extended discussion is necessary on the claim that Art. 64, Texas Penal Code, in effect at the time of Goodspeed's robbery trial, was unconstitutional. *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), had before it the question of the constitutionality of a one-phase trial where the jury returned a single verdict on guilt and punishment under the Texas recidivist statutes. In that case, the Supreme Court said:

"  .  .  .  .  No claim is made here that recidivist statutes are themselves unconstitutional, *nor could there be under our cases.* Such statutes and other enhanced-sentence laws, and procedures designed to implement their underlying policies, have been enacted in all the States, and by the Federal Government as well. .  .  .  Such statutes, though not in the precise procedural circumstances here involved, have been sustained by this Court on several occasions against contentions that they violate constitutional strictures dealing with double jeopardy, *ex post facto* laws, cruel and unusual punishment, due process, equal protection, and privileges and immunities .  .  . " 385 U.S. at 559–60, 87 S.Ct. at 651. (Emphasis supplied).

Goodspeed attempts to make a point out of the fact that Art. 64, Texas Penal Code, is identified with pertinent offenses by the provision, "A person convicted a second time of any offense to which the penalty of death is affixed as an alternate punishment .  .  . ", and that the "Death sentence was ruled inoperative in 1972",[8] citing *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

The purpose of the language about the death penalty in Art. 64 was to require that only a conviction of an offense of equal severity be used to enhance the punishment. That prevented an offense like forgery, etc., from being used to enhance the punishment for a much more serious offense like murder, or robbery with a fire-arm, etc. A death sentence was not mandatory, and Goodspeed received a sentence of life in the penitentiary, not death. The fact that the death penalty was an alternate punishment did not invalidate other valid punishments provided by the statute. In most cases which were reversed as a result of *Furman v. Georgia*, supra, only the penalty portion of the judgment was reversed. The conviction itself was left undisturbed, and in most cases life sentences were imposed under such convictions. In many cases in Texas, the Governor commuted the sentence to life imprisonment, which could not have been done if the convictions themselves were not valid.

Goodspeed's other contentions in regard to the validity of his life sentence do not have enough merit to require discussion.

When Goodspeed was brought before the Court on July 20, 1977, to be sure that,

---

compulsion necessary to establish a constitutional violation." (Emphasis added).

See also *Powers v. Estelle*, 5 Cir., 536 F.2d 1035 (1976).

8. The quotation is from Goodspeed's brief filed herein on February 3, 1977.

after studying the matter over, he wanted to abandon all grounds except the attack on the validity of the sentencing statutes involved in his robbery case, he filed a written statement, dated July 20, 1977, reiterating the claim of unconstitutionality of the Texas recidivist statutes, and saying:

"MY AMENDED APPLICATION IS EXACTLY AS I WANT IT."

On that appearance in Court he asked to be transferred back to the penitentiary where the atmosphere was less confining than it was in jail. The request was granted.

After he returned to the penitentiary, he mailed to the Clerk of this Court for filing an instrument that was filed on July 28, 1977, in which he attempted to re-iterate the claims that he was tried in prison clothes, and that he was denied his right of appeal in his murder case. Those claims are denied for each of the following reasons:

*Claim that he was denied right of appeal*

■ This identical claim has been previously adjudicated. In *Goodspeed v. Beto*, 5 Cir., 460 F.2d 398, the Court on an appeal from a former judgment of this Court denying one of Goodspeed's applications for writ of habeas corpus, said:

"Finally, petitioner alleged ineffective assistance of counsel, prejudicial publicity, suggestive lineups, *and denial of his right to appeal with respect to both convictions.* Finding neither conviction to be constitutionally infirm, the district court denied relief. We affirm the district court's disposition of all but one of Goodspeed's contentions." (Emphasis supplied).

The excepted contention was the one that Goodspeed was tried in jail clothes. The district court's holding on that issue was not reversed. The case was remanded for consideration by the district court of two questions. " . . . . And finally with regard to both harmless error and retroactivity, we prefer to have the benefit of the experience and wisdom of the able trial judge." 460 F.2d, at 400.

As has been heretofore shown, Goodspeed raised the claim of denial of appeal again in his state court habeas proceeding after the remand of his case. The state court evidentiary hearing was full, fair and adequate, with Goodspeed and his court-appointed counsel present and participating. The state court filed written findings of fact and conclusions of law on all points raised by Goodspeed. The findings on the issue of denial of right of appeal were adverse to Goodspeed and they were fully supported by the evidence. They are therefore presumed to be correct. 28 U.S.C., Sec. 2254.

In view of the language of the Court of Appeals in the quotation set out above, Goodspeed has had one more hearing on this claim than he was entitled to. There is nothing to show that he is entitled to a third one.

*Claim that he was tried in jail clothes*

Some point might be made of the fact that Goodspeed's abandonment of all claims except the one relating to the constitutionality of the Texas recidivist statutes waived the one with regard to the clothes he wore during the robbery trial. However, this Court prefers to dispose of claims of this kind on their merits, unless there is just reason for not doing so.

As has been heretofore pointed out, there have been two changes in regard to the clothes issue since the remand by the Court of Appeals. One change was in the law, and it was brought about by the decision of the Supreme Court in *Estelle v. Williams*, supra, handed down after the remand. The other change was factual, and it occurred as a result of the additional evidence offered in the hearing on the habeas action in the state court when Goodspeed re-opened the jail clothes issue. Each change was adverse to Goodspeed. *Estelle v. Williams* foreclosed any decision in favor of Goodspeed on the issue for the two reasons set forth in

footnote 7 above, even if there had been no additional evidence. If the issue were still open the Court would find on the basis of the evidence in the state court transcript, now on file in this proceeding, that there was no possibility of prejudice to Goodspeed from the clothes he wore during the robbery trial. Goodspeed himself obviously thought there was no prejudice; otherwise he would not have tried to put over on the Court the fraud about the garb from the state prison he claimed to have worn during the trial. Courts do not have to swallow a hoax of the kind this unscrupulous man tried to perpetrate with his phoney exhibit.

\* \* \* \* \* \*

■■■■ The instrument filed by Goodspeed on July 28, 1977, complains that he spent nine days in the Tarrant County jail without counsel when the Court ordered him produced in connection with his habeas corpus application. The Court did not appoint counsel for him for the reasons that follow. He was determined to represent himself. At the time he was brought before the Court, he had already filed a brief which he had said was not to be changed by any lawyer on the question that he insisted was the only one before the Court. No fact question was involved, and the law questions could have been deemed frivolous under *Spencer v. Texas*, supra, and the cases cited therein. He had misused court-appointed counsel in his previous hearings. At the time of his robbery trial, he publicly proclaimed to the newspapers that he was going to conduct his own defense, except for the fact that he was going to permit his counsel to make an argument to the jury. He did interrogate the jury panel on voir dire, question witnesses, and file legal briefs, without even consulting with his counsel. He used court-appointed counsel in the state habeas corpus hearing as unwitting tools to try to put over a hoax on the court. The law is well settled that while an accused in a criminal matter may conduct his case *pro se* or by counsel, he has no right to a hybrid representation, partly by himself and partly by counsel. *Shelton v. United States*, 5 Cir., 205 F.2d 806 (1953), cert. den. 346 U.S. 892, 74 S.Ct. 230, 98 L.Ed. 395; *Lee v. Alabama*, 5 Cir., 406 F.2d 466 (1968), cert. den. 395 U.S. 927, 89 S.Ct. 1787, 23 L.Ed.2d 246; *United States v. Hill*, 10 Cir., 526 F.2d 1019, cert. den. 425 U.S. 940, 96 S.Ct. 1676, 48 L.Ed.2d 182; *Duke v. United States*, 9 Cir., 255 F.2d 721 (1960), cert. den. 357 U.S. 920, 78 S.Ct. 1361, 2 L.Ed.2d 1365.[9] To use the language of the Court in the opinion in *Shelton v. United States*, supra, the Court does not have to appoint an attorney to take an inferior position in the conduct of his client's cause, as dictated by such client.

An order will be entered denying Goodspeed's application for writ of habeas corpus.

---

9. The following quotations are from two of the cases cited above

"... Under that statute [28 U.S.C. § 1654] Lee had a right to represent himself or to be represented by counsel, but he had no right to a hybrid representation partly by himself and partly by counsel." *Lee v. Alabama*, 406 F.2d, at 469.

The question of the effect of *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), on this rule was involved in *United States v. Hill*, supra. It was there decided that *Faretta* did not change the rule that while a district court has the discretion to permit hybrid representation, an accused has no constitutional or statutory right to it. The following is quoted from the Hill case:

"We believe that Faretta does not alter the established rules concerning hybrid representation. ... The Sixth Amendment does not give any indication that hybrid representation is a right of constitutional dimensions. Title 28 U.S.C. § 1654 is written in the disjunctive—'parties may ... conduct their own cases personally *or* by counsel. ... .' Thus no statutory right of hybrid representation is accorded. Finally, although not raised by appellant, we cannot say the trial court abused its discretion in denying hybrid representation in this case. ... ." 526 F.2d, at 1024–25.